# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-50074

United States Court of Appeals
Fifth Circuit

**FILED**

January 30, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

   Plaintiff - Appellee

v.

BRANDON GABRIEL MONTIEL-CORTES, also known as Brandon Gabriel
Garcia-Co, also known as Brandon Gabriel Garcia-Cortez,

   Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:15-CR-1415-1

Before DAVIS, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

   Brandon Gabriel Montiel-Cortes pleaded guilty to illegal reentry
following deportation. At sentencing, the district court concluded that his 2013
Nevada conviction for robbery constituted a "crime of violence" within the
meaning of United States Sentencing Guidelines § 2L1.2(b)(1)(A) (2015), thus
triggering a 16-level increase to his offense level. Applying the enhancement

---

   * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 16-50074

over Montiel-Cortes's objection, the district court sentenced him to 57 months in prison and three years of nonreporting supervised release. Montiel timely appealed. We affirm.

## I.

After Montiel-Cortes pleaded guilty without a plea agreement to illegal reentry following deportation, his presentence investigation report ("PSR") determined that his total offense level was 21, which included, inter alia, a 16-level increase for his 2013 Nevada conviction for robbery, in violation of Nev. Rev. Stat. Ann. § 200.380. The PSR included other state court documents relating to Montiel-Cortes's Nevada conviction, including the charging document, his *Alford* plea,[1] and the judgment of conviction.

The PSR concluded that Montiel-Cortes's Nevada robbery conviction qualified as a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A) (2015), which imposed a 16-level enhancement if the "defendant previously was deported, or unlawfully remained in the United States, after" a felony conviction for a crime of violence.[2] The Application Notes defined "crime of violence" as either (1) any of the enumerated offenses, including robbery or extortion, or (2) "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."[3] The PSR further determined that Montiel-Cortes's criminal history

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970). An *Alford* plea is one in which the defendant maintains his innocence but agrees to plead guilty. *Id.* at 37 (stating that a trial court may accept a plea of guilty "containing a protestation of innocence when . . . a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt").

[2] U.S.S.G. § 2L1.2(b)(1)(A)(ii) (2015).

[3] U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2015). The Application Note stated in full:

> "Crime of violence" means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is

2

No. 16-50074

category was IV and that his advisory guidelines range of imprisonment was 57 to 71 months.

Montiel-Cortes objected to the 16-level enhancement, arguing that the Nevada robbery offense was not a crime of violence because it encompassed conduct broader than the generic, contemporary definition of robbery. He argued that the Nevada offense, in contrast to generic robbery, did not require immediacy or a specific use of force. He also argued that the Supreme Court's grant of a writ certiorari in *Mathis v. United States*, — U.S. —, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016), discussed below, might have some impact on his case.

The district court overruled Montiel-Cortes's objection, holding that his Nevada robbery conviction was necessarily a crime of violence—specifically, the generic crime of robbery—under the modified categorical approach, also discussed below. The court sentenced him to 57 months in prison and three years of nonreporting supervised release. He timely appealed.

## II.

This appeal turns on whether the district court correctly interpreted the sentencing guidelines when it determined, under the modified categorical approach, that Montiel-Cortes's 2013 Nevada robbery conviction necessarily constituted the generic crime of robbery. We review the district court's interpretation of the sentencing guidelines de novo.[4]

---

> involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

*Id.*

[4] *United States v. Calderon-Pena*, 383 F.3d 254, 256 (5th Cir. 2004) (citing *United States v. Medina-Anicacio*, 325 F.3d 638, 643 (5th Cir. 2003)).

No. 16-50074

At the outset, we agree with the parties that, under *Mathis*, the district court erred by applying the modified categorical framework and instead should have applied the categorical approach. We recently summarized these two approaches in *United States v. Howell*, 838 F.3d 489, 494 (5th Cir. 2016) as follows:

> In determining if a prior conviction is for an offense enumerated or defined in a Guidelines provision, we generally apply the categorical approach and look to the elements of the offense enumerated or defined by the Guideline section and compare those elements to the elements of the prior offense for which the defendant was convicted. We do not consider the actual conduct of the defendant in committing the offense. If the offense is an enumerated offense, such as burglary, we first determine the elements contained in the generic, contemporary meaning of that offense.
>
> In one of several decisions on the subject, the Supreme Court explained the application of the categorical approach in *Descamps v. United States* [—— U.S. ——, 133 S. Ct. 2276, 2283, 186 L. Ed. 2d 438 (2013)]. The Supreme Court also explained in *Descamps*, as it had in prior opinions, that when a statute defines more than one crime, and not all of them constitute an enumerated generic offense, courts employ the "modified categorical approach" to "determine which crime formed the basis of the defendant's conviction." Courts may consult certain records pertaining to the prior offense to ascertain if the conviction rested on the generic or defined crime or instead was an over-inclusive offense that could not support a sentence enhancement. But, if the statute of conviction is not divisible, "[t]he modified [categorical] approach . . . has no role to play."[5]

In *Mathis*, the Supreme Court provided further guidance on how to determine whether a statute is divisible:

> Though *Mathis* dealt with the ACCA [Armed Career Criminal Act], rather than the Guidelines, the methodology of determining whether a statute is divisible and therefore whether the modified categorical approach may be employed, is the same, unless the

---

[5] 838 F.3d at 494–95 (footnotes omitted).

4

No. 16-50074

Guidelines were to specify otherwise. The Supreme Court explained that if a statute sets forth only various means of committing the offense, it is not divisible, but if the statute sets forth more than one offense by including alternative elements of each offense, then the statute is divisible. The test to distinguish means from elements is whether a jury must agree.[6]

In this case, both Montiel-Cortes and the Government agree that Nev. Rev. Stat. Ann. § 200.380 sets out alternative *means* of committing the crime of robbery, rather than alternative *elements*. Thus, under *Mathis*, Nev. Rev. Stat. Ann. § 200.380 is indivisible, and the district court erred by applying the modified categorical approach. More particularly, the district court erred by examining the state court documents to determine how, precisely, Montiel-Cortes violated Nev. Rev. Stat. Ann. § 200.380.

Instead, under *Mathis*, we must determine whether Nev. Rev. Stat. Ann. § 200.380, as an indivisible whole, categorically qualifies as a crime of violence such that any conduct criminalized by the Nevada robbery statute necessarily qualified as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A) (2015). If there is any conduct that would violate Nev. Rev. Stat. Ann. § 200.380 but would *not* qualify as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A), then the Nevada statute cannot support the Guidelines enhancement under the categorical approach.[7]

---

[6] *Id*. at 497 (footnotes omitted).

[7] *See, e.g.*, *Moncrieffe v. Holder*, ⸺ U.S. ⸺, 133 S. Ct. 1678, 1684, 185 L. Ed. 2d 727 (2013):

> By "generic," we mean the offenses must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison. Accordingly, a state offense is a categorical match with a generic federal offense only if a conviction of the state offense "'necessarily' involved ... facts equating to [the] generic [federal offense]." Whether the noncitizen's actual conduct involved such facts "is quite irrelevant."
>
> Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction

No. 16-50074

## III.

Given the above, we must determine whether conduct that violates Nev. Rev. Stat. Ann. § 200.380 necessarily qualifies as a "crime of violence," as defined in the Application Notes to U.S.S.G. § 2L1.2(b)(1)(A)(ii) as follows: (1) any of the enumerated offenses, including robbery and extortion, or (2) "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."[8]

### A. The Enumerated Offense of Robbery

The parties primarily argue about whether the Nevada robbery statute proscribes conduct that falls within the generic, contemporary meaning of robbery. Under the categorical framework, we compare the elements of the Nevada statute with the generic definition to determine whether conduct proscribed by the statute is broader than the generic definition.[9] Here, Montiel-Cortes argues that the Nevada statute is broader than the generic, contemporary meaning of robbery.

The Fifth Circuit has recognized that the generic, contemporary definition of robbery encompassed by the guidelines corresponds to the definition found in a majority of states' criminal codes and draws on the Model Penal Code, treatises, and other trusted authorities.[10] We have held that

---

"rested upon [nothing] more than the least of th[e] acts" criminalized, and then determine whether even those acts are encompassed by the generic federal offense.

*Id.* (citations omitted, alteration in original).

[8] U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2015).

[9] *See Taylor v. United States*, 495 U.S. 575 (1990); *United States v. Calderon-Pena*, 383 F.3d 254, 257 (5th Cir. 2004) (en banc).

[10] *United States v. Tellez-Martinez*, 517 F.3d 813, 815 (5th Cir. 2008) (citing *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 379 (5th Cir. 2006), *abrogated on other grounds by United States v. Rodriguez*, 711 F.3d 541, 547-63 (5th Cir. 2013) (en banc)).

No. 16-50074

"robbery may be thought of as aggravated larceny, containing at least the elements of misappropriation of property under circumstances involving [immediate] danger to the person."[11] The immediate danger element "makes robbery deserving of greater punishment than that provided for larceny and extortion."[12]

Montiel-Cortes was convicted under Nev. Rev. Stat. Ann. § 200.380, which provided in full:

> 1. Robbery is the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person or property, or the person or property of a member of his or her family, or of anyone in his or her company at the time of the robbery. A taking is by means of force or fear if force or fear is used to:
>
> > (a) Obtain or retain possession of the property;
> >
> > (b) Prevent or overcome resistance to the taking; or
> >
> > (c) Facilitate escape.
>
> The degree of force used is immaterial if it is used to compel acquiescence to the taking of or escaping with the property. A taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.
>
> 2. A person who commits robbery is guilty of a category B felony and shall be punished by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 15 years.[13]

Montiel-Cortes argues that the Nevada statute described the offense more broadly than the generic definition. Under the Nevada statute, he argues,

---

[11] *Id.* (quoting *Santiesteban-Hernandez*, 469 F.3d at 380).

[12] *Id.* (quoting *Santiesteban-Hernandez*, 469 F.3d at 380).

[13] Nev. Rev. Stat. Ann. § 200.380 (2013).

the phrase "force or violence or fear of injury, immediate or future" does not necessarily require immediate danger because a threat involving the future by definition cannot be "immediate." The government argues that the immediacy element is inherently satisfied because the force or putting in fear must occur contemporaneously with the taking.

Neither the Supreme Court nor this court has considered whether, under the categorical approach, Nevada robbery constitutes the enumerated offense of robbery for purposes of the 16-level enhancement. Nevertheless, our decisions addressing other state robbery statutes shows that this court has rejected arguments similar to the Government's and generally requires that danger to the victim be "immediate" to constitute a generic robbery.

For example, in *United States v. Alvarado-Rodriguez*, 269 F. App'x 427 (5th Cir. 2008), this court held that a California robbery statute, Cal. Penal Code § 211, fell within the generic definition of robbery where it defined robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."[14] The "fear" mentioned in the statute was defined as either (1) "fear of an unlawful injury to the person or property of the person robbed, or of any relative of his or member of his family" or (2) "fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery."[15]

The defendant argued that Cal. Penal Code § 211 was broader than the generic definition of robbery because the California statute criminalized threats to property in addition to threats to persons.[16]  We rejected that argument, finding that it misconstrued the essential language of Cal. Penal

---

[14] Cal. Penal Code § 211.
[15] Cal. Penal Code § 212.
[16] *Alvarado-Rodriguez*, 269 F. App'x at 429.

Code § 211 "defining robbery as a crime committed: (1) directly against the victim or in his presence; and (2) against his will."[17] The Court also noted that "the California robbery statute involves the misappropriation of property under circumstances involving danger to the person" and that the danger to the person "is inherent in the criminal act."[18] Therefore, "even when the statute is violated by placing the victim in fear of injury to property, the property has been misappropriated in circumstances "involving [immediate] danger to the person."[19] Thus, we held that Cal. Penal Code § 211 falls within the generic definition of robbery.[20]

In sum, although generic robbery may be broad enough to encompass a fear concerning injury to property in addition to personal injury, the danger must still be "immediate." Because the Nevada statute covered not just immediate danger but also future danger, we conclude that it was broader than the generic, contemporary definition of robbery. In fact, as Montiel-Cortes points out, California courts distinguish Nevada robbery because it permits fear of a future injury.[21]

### B. The Enumerated Offense of Extortion

That does not end our inquiry, however. The categorical framework requires us to determine whether the least culpable conduct would qualify as a "crime of violence" under the guidelines, not just a single one of the enumerated offenses. We must determine whether the least culpable conduct

---

[17] *Id.*; *see also United States v. Tellez-Martinez*, 517 F.3d 813, 815 (5th Cir. 2008) (per curiam) (holding that Cal. Penal Code § 211 does fall within the generic definition of robbery).

[18] *Id.*

[19] *Id.* (quoting *Santiesteban-Hernandez*, 469 F.3d at 380).

[20] *Id.*

[21] *See People v. McGee*, 133 P.3d 1054, 1057 (Cal. 2007), *abrogated on other grounds by Descamps,* 133 S. Ct. at 2276 (noting that Nevada robbery, on its face, did not qualify as a serious felony in California because, unlike California robbery, Nevada permits "a taking accomplished by fear of future injury")).

No. 16-50074

(involving future danger), which does not qualify as the enumerated "crime of violence" of robbery, nevertheless still qualifies as another "crime of violence." We conclude that such conduct qualifies as generic extortion.

The generic, contemporary definition of extortion is "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats."[22] Montiel-Cortes argues that the Nevada statute required that the taking be against the victim's will, whereas the generic definition of extortion requires the victim's consent. We disagree. The Nevada statute provided:

> 1. Robbery is the unlawful taking of personal property from the person of another, or in the person's presence, *against his or her will*, by means of force or violence or fear of injury, immediate or future, to his or her person or property, or the person or property of a member of his or her family, or of anyone in his or her company at the time of the robbery. A taking is by means of force or fear if force or fear is used to:
>
> > (a) Obtain or retain possession of the property;
> >
> > (b) Prevent or overcome resistance to the taking; or
> >
> > (c) Facilitate escape.
>
> *The degree of force used is immaterial if it is used to compel acquiescence to the taking of or escaping with the property.* A taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.[23]

Although the statute uses the phrase "against his or her will," implying a lack of consent, it also emphasizes that the force be "used to compel acquiescence to the taking of or escaping with the property." In other words,

---

[22] *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409-10 (2003) (internal quotation marks omitted).

[23] Nev. Rev. Stat. Ann. § 200.380 (emphasis added).

there is consent only in the narrowest sense, but that consent is only given because of a threat. In a more general sense, the consent is against the victim's will. Indeed, the Ninth Circuit has noted that "the 'with consent' element of generic extortion is not inconsistent with the 'against the will' element of a Cal. Penal Code § 211 conviction for a taking involving threats to property,"[24] quoting from a treatise in support:

> It is sometimes said that robbery differs from statutory extortion in those states which require property acquisition in that in the former the taking of property must be "against the will" of the victim, while in the latter the taking must be "with the consent" of the victim, induced by the other's unlawful threat; but, in spite of the different expressions, there is no difference here, for both crimes equally require that the defendant's threats induce the victim to give up his property, something which he would not otherwise have done.[25]

We agree and therefore conclude there is no meaningful distinction between the Nevada statute's formulation and the generic, contemporary definition of extortion, at least with respect to a Nevada robbery involving a *future* danger.

## IV. Conclusion.

In sum, we conclude that a conviction under the Nevada robbery statute, Nev. Rev. Stat. Ann. § 200.380, necessarily is a crime of violence under the categorical framework. Any Nevada robbery involving an immediate danger would satisfy the generic, contemporary definition of robbery, while any Nevada robbery involving a future danger would satisfy the generic, contemporary definition of extortion. We therefore agree with the Ninth Circuit's statement, in *United States v. Harris*, 572 F.3d 1065 (9th Cir. 2009)

---

[24] *United States v. Becerril-Lopez*, 541 F.3d 881, 892 n.9 (9th Cir. 2008).

[25] *Id*. (quoting 3 W. LaFave, Substantive Criminal Law § 20.4(b) (2d ed. 2003) (footnote omitted)).

(per curiam), that "any conduct under Nev. Rev. Stat. § 200.380 that did not satisfy the generic definition of robbery . . . would satisfy the generic definition of extortion."[26] Montiel-Cortes has pointed to no conduct proscribed by the Nevada statute that did not also qualify as a crime of violence under the guidelines. Thus, we conclude that Montiel-Cortes's conviction for Nevada robbery, in violation of Nev. Rev. Stat. Ann. § 200.380, constituted a crime of violence under the guidelines, triggering the 16-level enhancement.

Although we find the district court erred in how it arrived at the sentence, we conclude the sentence was correct and should be affirmed.

AFFIRMED.

---

[26] *Id.* at 1066. While the Ninth Circuit was considering whether the Nevada statute fell under the generic definition for an enumerated crime of violence under a different sentencing guideline, the two guidelines in large part include the same offenses and the guideline at issue in our case is even more expansive. *Compare* U.S.S.G. § 4B1.2(a)(2) (specifying that "crime of violence" for career offenders includes "murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. 5845(a) or explosive material as defined in 18 U.S.C. 841(c)"), *with* U.S.S.G. § 2L1.2, cmt. 1(B)(iii) (specifying that a "crime of violence" for illegal reentry purposes includes "any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling").