# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-20644

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RODOLFO NUNEZ-MEDRANO,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CR-171-1

Before KING, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

Rodolfo Nunez-Medrano challenges the length of his prison sentence. Following his guilty plea for reentering the United States without authorization after removal, the district court sentenced Nunez-Medrano to serve 84 months in prison. But Nunez-Medrano contends that the district court erroneously enhanced his sentence because it wrongly concluded that his prior deportation followed a conviction for a crime of violence.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20644

For the reasons explained below, we AFFIRM the district court's judgment, but we REMAND for the district court to reform the judgment to reflect a conviction under 8 U.S.C. § 1326(b)(1), not § 1326(b)(2).

## I.

In 2005, a Texas state court convicted Nunez-Medrano, a Mexican national, of conspiracy to commit aggravated robbery. The state court sentenced Nunez-Medrano to 15 years in prison; he served about 4 years of his sentence before being paroled. Upon his parole, federal immigration officials deported Nunez-Medrano to Mexico. Nunez-Medrano returned to the United States in 2012 without authorization. A few months after returning to the United States, Texas officials arrested Nunez-Medrano on drug charges.

Federal authorities subsequently charged Nunez-Medrano with unlawfully reentering the United States following removal. *See* 8 U.S.C. § 1326(a). Nunez-Medrano pleaded guilty. Applying the 2011 edition of the U.S. Sentencing Guidelines (the "Guidelines"), the U.S. Probation Department ("Probation") calculated Nunez-Medrano's sentencing range as 77 to 96 months in prison. In reaching this result, Probation determined that Nunez-Medrano's base offense level was 8. It then added a 16-level sentencing enhancement because it concluded his aggravated-robbery conviction qualified as a "crime of violence" under the Guidelines. *See* U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A) (U.S. Sentencing Comm'n 2011). It also reduced Nunez-Medrano's offense level by 3 points for acceptance of responsibility, which brought his total offense level to 21. And it calculated Nunez-Medrano's criminal-history score to be 14. Probation also determined that under § 1326(b)(2), Nunez-Medrano was subject to a maximum sentence of 20 years in prison because his aggravated-robbery conviction constituted a conviction for an "aggravated felony" as used in that subsection.

No. 17-20644

Nunez-Medrano objected to Probation's presentence report. He argued that his aggravated-robbery conviction was not a crime-of-violence conviction because Texas's robbery statute criminalizes conduct broader than the generic offense of robbery and does not require the use, attempted use, or threatened use of physical force to sustain a conviction. He also asserted that Texas aggravated robbery was not an aggravated felony under § 1326(b)(2) because (1) part of the definition of aggravated felony is unconstitutionally vague; and (2) the other part of the definition requires that the crime include as an element the use, attempted use, or threatened use of physical force and thus does not cover Texas aggravated robbery. The district court overruled Nunez-Medrano's objections and sentenced him to serve 84 months in prison. Nunez-Medrano appeals.

## II.

Although we review district courts' ultimate sentencing decisions for abuse of discretion, we review their Guidelines calculations de novo. *United States v. Klein*, 543 F.3d 206, 213 (5th Cir. 2008).

Section 2L1.2(b)(1)(A) provides for a 16-level sentencing enhancement to defendants convicted of illegal reentry if their prior removal followed a conviction for "a crime of violence." The Guidelines' commentary defines "crime of violence" as one of several enumerated offenses—including robbery—or an offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another." § 2L1.2 cmt. n.1(B)(iii). Section 2L1.2(b)(1)(A)'s enhancement applies equally to a conviction for conspiracy to commit a crime of violence as it does to a completed crime of violence. *See* § 2L1.2 cmt. n.5.

In determining whether a defendant's predicate conviction is a crime of violence, we employ the so-called categorical approach. *See United States v. Herrera-Alvarez*, 753 F.3d 132, 134 (5th Cir. 2014). Under this approach,

instead of looking to the specific conduct for which the defendant was previously convicted, "we inquire, based solely upon the elements of the statute forming the basis for the defendant's prior conviction, whether the offense qualifies as a crime of violence." *Id.*; *see also Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) (specifying that we must focus on whether the "'least of th[e] acts' criminalized" by the predicate statute is categorically a crime of violence (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010) (alteration in original)). Put as a counterfactual, a state offense is not a crime of violence if there is "a realistic probability . . . that the State would apply its statute to conduct that" does not fall within the Guidelines' definition of crime of violence. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).[1]

Under Texas law, a defendant is guilty of robbery if the defendant, "in the course of committing theft[2] . . . and with intent to obtain or maintain control of the property, . . . (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Tex. Penal Code. § 29.02(a). Aggravated robbery is robbery in which (1) the defendant "causes serious bodily injury to another"; (2) the defendant "uses or exhibits a deadly weapon"; or (3) the victim is elderly or disabled. *Id.* § 29.03(a).

Applying the categorical approach here, the district court's Guidelines determination can be affirmed if these elements of aggravated robbery necessarily include either (1) the use, attempted use, or threatened use of

---

[1] We recently held that Texas aggravated robbery is divisible and we may thus employ the modified categorical approach under which we look to certain trial-court documents to ascertain the specific part of the statute the defendant was charged under. *See United States v. Lerma*, 877 F.3d 628, 634 (5th Cir. 2017). But the parties agree we may not employ the modified categorical approach in this case because the record does not contain the necessary trial-court documents for us to do so.

[2] Texas law defines theft as "unlawful[] appropriat[ion] [of] property with intent to deprive the owner of property." Tex. Penal Code § 31.03(a).

physical force; or (2) the generic elements of robbery. We need not address the parties' use-of-force arguments in these contexts because we conclude that Texas aggravated robbery is generic robbery for purposes of this Guidelines provision.

Whether Nunez-Medrano's Texas conviction for conspiracy to commit aggravated robbery qualifies as a conviction for "robbery" under the Guidelines is a far more complicated inquiry than first blush would suggest. The Supreme Court has warned that we may not rely on the labels a state ascribes to its crimes. *See Taylor v. United States*, 495 U.S. 575, 590-92 (1990). Rather, we must determine whether robbery in Texas is identical to or narrower than the generic definition of robbery. *See United States v. Montiel-Cortes*, 849 F.3d 221, 226 (5th Cir. 2017). If not, then despite Texas's label, it is not "robbery" as used in the Guidelines. *See id.* at 228 (concluding Nevada robbery is broader than generic robbery because it criminalizes theft under threat of future—as opposed to just immediate—danger).

"[T]he generic, contemporary definition of robbery encompassed by the [G]uidelines corresponds to the definition found in a majority of states' criminal codes and draws on the Model Penal Code, treatises, and other trusted authorities." *Id.* at 226; *see also Taylor*, 495 U.S. at 589 (explaining that generic definition of burglary "roughly correspond[s] to the definitions of burglary in a majority of the [s]tates' criminal codes"). We have previously held that Texas robbery falls within the generic definition of robbery. *See United States v. Santiesteban-Hernandez*, 469 F.3d 376, 381 (5th Cir. 2006), *overruled in part on other grounds by United States v. Rodriguez*, 711 F.3d 541 (5th Cir. 2013) (en banc). In *Santiesteban-Hernandez*, we concluded that "the generic form of robbery 'may be thought of as aggravated larceny,' containing at least the elements of 'misappropriation of property under circumstances involving [immediate] danger to the person.'" *Id.* at 380 (alteration in original) (quoting

Wayne R. LaFave, *Substantive Criminal Law* § 20.3 intro., (d)(2) (2d ed. 2003)). We noted that Texas deviates from most states in that it "focuses on the realization of the immediate danger rather than the means by which the immediate danger is created." *Id.* at 381. But we concluded that these differing approaches "are two sides of the same coin." *Id.* In our view, it was enough that both Texas robbery and generic robbery "involve theft and immediate danger to a person." *Id.*

Nunez-Medrano argues that in the time since we decided *Santiesteban-Hernandez*, the Texas Court of Criminal Appeals ("TCCA") has broadened Texas robbery such that it no longer fits within the generic definition of robbery. Specifically, Nunez-Medrano points to *Howard v. State*, 333 S.W.3d 137 (Tex. Crim. App. 2011), in which the TCCA held that a defendant need not actually interact with the victim to commit robbery. In that case, the defendant entered a convenience store during business hours wearing a mask and brandishing a gun. *Id.* at 137. The only employee working at the time was in a back office when the defendant came in, but he saw the defendant through a one-way mirror and on a security monitor. *Id.* at 137-38. The employee locked himself in the office and called 911; the defendant unsuccessfully tried to open the cash register, took the employee's wallet from the front counter, and left. *Id.* at 138. The TCCA held that the lack of interaction between the defendant and the victim did not turn the robbery into a theft as long as the defendant intentionally or knowingly placed the victim in fear of bodily injury. *See id.* at 139. And it concluded that under the facts of the case, "[a] rational juror could have inferred from this evidence that the [defendant] was aware it was reasonably certain that his actions would place someone in fear of imminent bodily injury or death," even though there was no evidence the defendant actually knew about the employee locked in the back office. *Id.* at 140.

No. 17-20644

Pointing us to the common-law requirement that a robbery defendant takes the property "from the person or presence of the victim," Wayne R. LaFave, *Substantive Criminal Law* § 20.3(c) (3d ed. 2017), Nunez-Medrano asserts that *Howard* removes Texas robbery from the orbit of generic robbery.[3] This argument suffers two flaws. First, in *Santiesteban-Hernandez*, we repudiated the notion that generic robbery specifically requires the defendant to take the property from the person or presence of another. *See* 469 F.3d at 380. Rather, we explained that the two key features of generic robbery are (1) theft and (2) immediate danger to the victim. *See id.* And although we acknowledged that most states "implement[]" the immediate-danger element by "requir[ing] property to be taken from a person or a person's presence by means of force or putting in fear," we held that Texas sufficiently implements the immediate-danger element by requiring the defendant to cause or threaten bodily injury. *Id.* at 380-81. Accordingly, Nunez-Medrano seeks to define generic robbery too narrowly.

Second, even assuming Nunez-Medrano is correct that generic robbery does require the defendant to take the property from the presence of the victim, *Howard*'s holding is consistent with this requirement. True, the victim in *Howard* was in a different room when the defendant took his wallet. But robbery's traditional presence requirement

> is not so much a matter of eyesight as it is one of proximity and control: the property taken in the robbery must be close enough to the victim and sufficiently under his control that, had the latter

---

[3] Nunez-Medrano refers interchangeably to generic robbery having an "interaction" requirement and "presence" requirement. To the extent he intends to argue that Texas robbery is not generic robbery because it lacks a presence requirement, his argument fails for the reasons explained below. To the extent he argues that Texas robbery lacks an "interaction" requirement separate from a "presence" requirement, he fails to cite any authority showing that generic robbery requires any "interaction" beyond the victim's presence.

> not been subjected to violence or intimidation by the robber, he could have prevented the taking.

LaFave (3d ed.), *supra*, at § 20.3(c); *see also United States v. Edwards*, 231 F.3d 933, 936 (5th Cir. 2000) (holding that for purpose of federal carjacking statute, "property is in the *presence* of a person if it is so within his reach, observation or control, *that he could if not overcome by violence or prevented by fear*, retain his possession of it" (quoting *United States v. Lake*, 150 F.3d 269, 272 (3d Cir. 1998))); *People v. Hayes*, 802 P.2d 376, 406-07 (Cal. 1990) (citing cases from 11 jurisdictions for the "generally accepted" proposition that "[a] thing is in the [immediate] presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it" (alterations in original) (quoting *Commonwealth v. Homer*, 127 N.E. 517, 520 (Mass. 1920))). *See generally United States v. Soler*, 759 F.3d 226, 233 (2d Cir. 2014) (discussing development of common-law presence requirement). The TCCA did not discuss the presence requirement in *Howard*, but by all appearances, it was met: the victim testified that the sight of the armed and masked defendant frightened him; the victim locked himself in the office, leaving his wallet unattended; and the defendant was able to take the wallet without any resistance from the defendant. If the victim in *Howard* had "not been subjected to violence or intimidation," he presumably could have confronted the defendant and retained his wallet. LaFave, *supra*, at § 20.3(c).

Of course the text of Texas's robbery statute does not actually incorporate a presence requirement. *See* § 29.02(a). But nothing in *Howard* undermines our prior precedent that "the elements of the Texas statute substantially correspond to the basic elements of the generic offense." *Santiesteban-Hernandez*, 469 F.3d at 381. Accordingly, we reaffirm that Texas

robbery is no broader than generic robbery.[4] *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 462–63 (5th Cir. 2010) ("We . . . apply panel precedent [interpreting state law] 'absent a subsequent state court decision or statutory amendment which makes [the panel decision] clearly wrong.'" (second alteration in original) (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 425 (5th Cir. 2001))).

We therefore conclude that the district court properly enhanced Nunez-Medrano's sentence pursuant to § 2L1.2(b)(1)(A).

## III.

As a final matter, we address Nunez-Medrano's contention that the judgment below erroneously reflects that he was sentenced for unauthorized reentry after removal subsequent to an aggravated-felony conviction under § 1326(b)(2), which carries a maximum sentence of 20 years in prison. He insists that Texas aggravated robbery is not an aggravated felony within the meaning of § 1326(b)(2).[5]

We agree. Title 8 of the United States Code, Section 1101(a)(43) defines "aggravated felony," inter alia,[6] by incorporating 18 U.S.C. § 16's definition of "crime of violence." 8 U.S.C. § 1101(a)(43). Section 16, in turn, defines "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

---

[4] To the extent Texas robbery is a crime of violence, "it follows that the offense of aggravated robbery . . . is also a crime of violence because it includes every element required for a conviction" for robbery. *United States v. Sanchez-Lopez*, 493 F. App'x 557, 558 (5th Cir. 2012) (unpublished). Nunez-Medrano does not argue otherwise.

[5] Within § 1326, § 1326(a) defines the substantive offense, while § 1326(b) enhances the maximum sentence available based on certain aggravating factors, including prior convictions.

[6] The government does not argue that Texas aggravated robbery is "a theft offense." § 1101(a)(43)(G). We will not consider this question sua sponte.

No. 17-20644

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The Supreme Court recently held that § 16(b) is unconstitutionally vague. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018). Thus, § 1326(b)(2) applies only if Texas aggravated robbery necessarily involves the use, attempted use, or threatened use of physical force.

The parties spend most of their opening briefs disputing this question. All this effort was for naught: after the close of briefing but before oral argument, another panel of this court held that Texas simple robbery is not a violent felony under the Armed Career Criminal Act's ("ACCA") substantially similar force clause. *See United States v. Burris*, 896 F.3d 320, 322 (5th Cir. 2018). It necessarily follows from *Burris* that Texas simple robbery is not a crime of violence under § 16(a) either.

We generally interpret similarly worded force clauses identically. *See United States v. Moore*, 635 F.3d 774, 776 (5th Cir. 2011). The only difference between the ACCA's force clause and § 16(a) is that § 16(a) includes force against the property of another as opposed to only the person of another. *Compare* § 16(b), *with* 18 U.S.C. § 924(e)(2)(B)(i). The government does not argue that the inclusion of force against property makes any difference in the force clause's application to Texas aggravated robbery, and we see no reason why it would.

Further, that Nunez-Medrano was convicted of aggravated as opposed to simple robbery makes no difference in this case. Recall that two of the factors that transform simple robbery into aggravated robbery are the victim's age and the victim's disability. *See* § 29.03(a)(3). The victim's status does not add a force requirement, and the government makes no argument to the contrary. True,

we have previously held that aggravated robbery under § 29.03(a)(2)—which defines aggravated robbery as simple robbery plus the use of a weapon—is a violent felony. *See United States v. Lerma*, 877 F.3d 628, 636 (5th Cir. 2017). But as discussed in note 1, *supra*, the government concedes that, unlike in *Lerma*, the modified categorical approach does not apply in this case. Accordingly, we must presume Nunez-Medrano was convicted for committing the least of the acts criminalized, *see Moncrieffe*, 569 U.S. at 190-91, which here would be simple robbery together with causing bodily injury to an elderly or disabled victim under § 29.03(a)(3).

The government makes no argument that—insofar as *Burris* controls this case—Nunez-Medrano's conviction qualifies under § 16(a). Instead, it asks us to abate this case while we consider its petition for en banc rehearing in *Burris*. We decline the government's invitation to await *Burris*'s final resolution.

Therefore, Nunez-Medrano should have instead been sentenced under § 1326(b)(1), which subjects those who reenter the United States following removal subsequent to a nonaggravated-felony conviction to a maximum 10-year sentence. Nevertheless, we see no reason to remand for resentencing. Recall that the district court sentenced Nunez-Medrano to 84 months—or 7 years—in prison. Nunez-Medrano's sentence thus falls comfortably below § 1326(b)(1)'s 10-year maximum and is within the Guidelines range, which does not depend on § 1326(b)'s enhancements. Accordingly, we instead remand this case to the district court with instructions that it reform the judgment to reflect a sentence pursuant to § 1326(b)(1). *See United States v. Castro-Trevino*, 464 F.3d 536, 543 (5th Cir. 2006) ("When the facts support conviction of a lesser-included offense we can generally modify the judgment to reflect the lesser offense without detrimentally affecting the defendant's rights.").

11

No. 17-20644

## IV.

For the foregoing reason, we REMAND to the district court with instructions that it reform the judgment to reflect that Nunez-Medrano's conviction and sentence arise from §§ 1326(a) and 1326(b)(1), and we otherwise AFFIRM.