**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

WILBER ERNESTO CASTILLO, a/k/a
Wilber Henriquez, a/k/a Wilber Ernesto
Henriquez, a/k/a Wilber Ernesto
Henriquez-Segundo,

     Defendant - Appellant.

No. 14-4129

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:14-CR-00288-TS-1)**
_____

Scott Keith Wilson, Assistant Federal Public Defender (Kathryn N. Nester, Federal
Public Defender with him on the briefs), Salt Lake City, Utah, for Defendant-Appellant.

Elizabethanne C. Stevens, Assistant United States Attorney (Carlie Christensen, United
States Attorney, District of Utah, with her on the brief), Salt Lake City, Utah, for
Plaintiff-Appellee.

_____

Before **MATHESON**, **EBEL**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

## I.  INTRODUCTION

Wilber Ernesto Castillo, a citizen of El Salvador, appeals his sentence for violating 8 U.S.C. § 1326, which prohibits reentry into the United States by a previously removed alien. Mr. Castillo argues his sentence was miscalculated because the district court incorrectly considered a previous California robbery conviction to be a "crime of violence" for purposes of a sentencing enhancement under § 2L1.2 of the United States Sentencing Guidelines (Guidelines). Mr. Castillo asks this court to vacate his sentence and remand for resentencing. Because we conclude the district court correctly considered Mr. Castillo's California robbery conviction to be a crime of violence, we affirm.

## II.  BACKGROUND

In 2004, Mr. Castillo was convicted in California state court for second-degree robbery, a violation of California Penal Code section 211. He was removed from the United States in 2007. In July 2009, Mr. Castillo reentered the United States without inspection. Mr. Castillo was convicted in 2011 for shoplifting and in 2014 for disorderly conduct. After his 2014 arrest, agents from Immigration and Customs Enforcement interviewed Mr. Castillo. Based on his admissions that he had been removed from the United States and then reentered without inspection, the government charged Mr. Castillo with a violation of 8 U.S.C. § 1326, which criminalizes reentry by previously removed aliens.

Prior to trial, the Government filed notice that, if Mr. Castillo was convicted of illegal reentry, it would seek enhancement of that sentence based on Mr. Castillo's California robbery conviction. Mr. Castillo consented to initiation of a presentence

2

investigation and disclosure of the report prior to entering a guilty plea or proceeding to trial. The report indicated the base offense level for illegal reentry was eight but designated Mr. Castillo's California robbery conviction as a crime of violence, which increased his offense level to twenty-four. After adjusting downward for Mr. Castillo's acceptance of responsibility, the report calculated a total offense level of twenty-one, resulting in a Guidelines sentencing range of 46–57 months' imprisonment. Mr. Castillo then pled guilty but objected to the sixteen-level enhancement of his offense level, arguing that his California robbery conviction was not a crime of violence. The district court ruled Mr. Castillo's prior conviction was a crime of violence and the sixteen-level enhancement and total offense level of twenty-one were therefore correct. Nevertheless, the district court sentenced Mr. Castillo to only twenty-four months' imprisonment. Mr. Castillo now appeals his sentence.

### III.  ANALYSIS

The sole issue presented on appeal is whether the district court erred in concluding that Mr. Castillo's conviction for robbery under California Penal Code section 211 qualifies as a conviction for a crime of violence pursuant to § 2L1.2 of the Guidelines. "Whether a conviction qualifies as a crime of violence under § 2L1.2 is a matter of statutory interpretation that we . . . review de novo." *United States v. Juarez-Galvan*, 572 F.3d 1156, 1158 (10th Cir. 2009). Accordingly, we begin with the relevant language.

Section 2L1.2 governs sentencing for crimes involving unlawful entry into the United States. That section directs district courts to apply a sixteen-level enhancement "[i]f the defendant previously was deported" after "a conviction for a felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). The commentary to that section defines the term "crime of violence":

> "Crime of violence" means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses . . . , statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

*Id.* § 2L1.2 cmt. n. 1(B)(iii). To determine whether a prior conviction is a crime of violence within the meaning of § 2L1.2, "this circuit follows the same approach set forth by the Supreme Court for determining whether a prior conviction was for a violent felony under the Armed Career Criminal Act." *United States v. Ventura-Perez*, 666 F.3d 670, 673 (10th Cir. 2012); *see also United States v. Taylor*, 495 U.S. 575, 599–602 (1990). We therefore generally apply a "categorical approach," considering only whether the elements of the state statute of conviction substantially correspond to the "uniform generic definition" of an offense enumerated in § 2L1.2. *Juarez-Galvan*, 572 F.3d at 1159. A court may look beyond the elements of the state statute only when the statute is divisible: "refer[ring] to several different crimes, not all of which qualify as [crimes of violence]," thereby requiring the court to consider certain reliable documents to "determine which crime formed the basis of the defendant's conviction." *See Descamps v. United States*, 133 S. Ct. 2276, 2284 (2013).

Applying that categorical approach, we must compare the elements of the relevant offenses. We begin with the elements of the crime of conviction, California Penal Code section 211, which is titled as a robbery statute. Section 211 provides: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code § 211. But "fear" for purposes of section 211 can be accomplished through threat of injury either to a person or to property. *Id.* § 212.

Turning then to the "uniform generic definition" part of the inquiry, we consider whether section 211 substantially corresponds to the "modern generic view" of any of the offenses enumerated in § 2L1.2 of the Guidelines. *Taylor*, 495 U.S. at 589. This inquiry is guided by reference to such crimes' definitions under the "majority of the States' criminal codes," *id.*, "as well as prominent secondary sources, such as criminal law treatises and the Model Penal Code," *United States v. Garcia-Caraveo*, 586 F.3d 1230, 1233 (10th Cir. 2009).

Mr. Castillo does not dispute that the threat of injury to a *person* in the course of unlawfully depriving another of property satisfies the generic definition of robbery. "The commonest sort of fear in robbery, of course, is the fear, engendered by the robber's intentional threat, of immediate bodily injury or death" to the property owner, a family member, or another in the property owner's presence. 3 Wayne R. LaFave, Substantive Criminal Law § 20.3(d)(2) (2d ed. 2003). We therefore accept that a violation of section 211 achieved through threats to a person, rather than property, corresponds to generic robbery and thus constitutes a crime of violence. Mr. Castillo instead frames the

5

"pertinent question" here, with our emphasis, as "whether the majority of state codes and significant secondary sources include threats to *property* in the definition of generic robbery." Mr. Castillo contends the weight of authority and the vast majority of state criminal codes require a threat to a person, not merely to property, to constitute robbery. Accordingly, Mr. Castillo argues section 211 sweeps more broadly than the generic crime of robbery and a section 211 conviction therefore cannot serve as a predicate crime of violence for purposes of a sentencing enhancement under § 2L1.2.[1]

The government identifies some authorities suggesting threats to property are included in the generic definition of robbery but concedes this is "the minority position" in state criminal codes. Instead, the government asks us to compare section 211 to both the generic definition of robbery and the generic definition of extortion. Extortion involves "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats." *Scheidler v. Nat'l Organization for Women, Inc.*, 537 U.S. 393, 409–10 (2003). "Virtually all [extortion] statutes cover threats to injure (i.e., to cause bodily harm to the person *or to damage the property of*) the victim or some other person." 3 LaFave, *supra* § 20.4(a)(4) & n.4 (emphasis added). "One of the most common acts outlawed by extortion or blackmail statutes is a threat of any injury to the

---

[1] In *United States v. Garcia-Caraveo*, we considered in a limited fashion whether § 211 corresponds to the generic definition of robbery. 586 F.3d 1230, 1233 (10th Cir. 2009). We held that, at least with respect to the question of when a use or threat of force must take place to constitute a robbery, § 211 "is in line with the uniform generic definition of robbery." *Id.* at 1235. But we specifically reserved the question of whether "the entirety of California's robbery statute is within the uniform generic definition of robbery," and *Garcia-Caraveo* therefore does not control our decision here. *See id.* at 1236 n.4.

person or property of another for the purpose of obtaining some desired personal gain."

31A Am. Jur. 2d, *Extortion, Blackmail, and Threats* § 25. As LaFave observes, because the common-law theory of "robbery by threat" encompassed only threats of immediate bodily harm or destruction of the victim's home, States enacted extortion statutes to "fill this vacuum" and criminalize "the acquisition of property by means of other effective threats, such as a threat to . . . destroy the victim's property other than his house." 3 LaFave, *supra* § 20.4(a). A survey of state statutes demonstrates the majority view that the unlawful taking of property of another by threats to property falls within the definition of extortion. *See id.* § 20.4 n.16 (collecting statutes).

Thus, a violation of section 211 achieved through threats to a person meets the generic robbery definition, while a violation of section 211 based on a threat to property corresponds to generic extortion. *See* U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii). Because either of the two methods of violating section 211 corresponds to the generic form of an enumerated crime of violence under § 2L1.2, the government argues the district court properly enhanced Mr. Castillo's sentence under § 2L1.2 of the Guidelines. Mr. Castillo disagrees, claiming that all of the criminal conduct contained in the offense of conviction must correspond to a single crime of violence enumerated in § 2L1.2 of the Guidelines. We are not convinced the inquiry is as limited as Mr. Castillo contends.

First, nothing in the Guidelines or related authorities suggests a court is limited to considering only a single corresponding crime of violence when evaluating a state statute under the categorical framework. The Guidelines define a crime of violence as "*any of* the [enumerated] offenses under federal, state, or local law." U.S.S.G.

7

§ 2L1.2 cmt. n. 1(B)(iii) (emphasis added). Thus, the plain language does not limit the comparison of the crime of conviction to only one of the enumerated crimes of violence. Further, the inclusion of a broad residual clause in § 2L1.2 suggests the Sentencing Commission intended to capture all crimes of violence, however denominated. *Id.* (including in the definition of crime of violence "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another"). Accordingly, we see nothing in the text of § 2L1.2 or its accompanying commentary that supports the limitation Mr. Castillo seeks to read into the categorical inquiry.

Likewise, the California Legislature's decision to label the offense defined by section 211 as "[r]obbery" is not dispositive of which generic crime or crimes listed in the Guidelines may be used for comparison. "When applying the Guidelines, we have rejected the notion that whether a state conviction was for an enumerated but undefined crime depends upon how the crime is characterized under state law." *United States v. Servin-Acosta*, 534 F.3d 1362, 1366 (10th Cir. 2008). Instead, the purpose of the Guidelines is to provide "certainty and fairness" in federal sentencing and to avoid "unwarranted sentencing disparities." 28 U.S.C. § 991(b)(1)(B); *United States v. Cornelio-Pena*, 435 F.3d 1279, 1285 n.4 (10th Cir. 2006). Mr. Castillo's interpretation of the Guidelines would reach just the opposite result.

As discussed, most states codify extortion and robbery in separate criminal statutes, avoiding the overlap contained in California Penal Code section 211. *See, e.g.,* N.Y. Penal Law §§ 155.05(e), 160.00; Utah Code Ann. §§ 76-6-301, 76-6-406; Wash.

8

Rev. Code §§ 9A.04.110(28), 9A.56.20; *see also* 3 LaFave, *supra* § 20.4(a) (noting that "practically all states have enacted statutes creating what is in effect a new crime—in some states called statutory extortion, in others blackmail, and generally carrying a penalty less severe than for robbery"). Therefore, a person convicted of unlawful reentry who was previously convicted in those states of obtaining property by means of a threat to property or to a person would receive a § 2L1.2-enhanced sentence based on a categorical comparison between the crime of conviction and either robbery or extortion. But, under Mr. Castillo's analysis, persons convicted of unlawful reentry who were previously convicted for similar criminal activity in California under section 211 could avoid that sixteen-level enhancement by imposition of a one-crime-of-violence limit found nowhere in the Guidelines. We see no reason to treat a defendant differently with respect to sentencing merely because California has chosen to include as a subset of its robbery statute conduct that would be considered extortion in most other jurisdictions. *See United States v. Frias-Trujillo*, 9 F.3d 875, 877 n.1 (10th Cir. 1993) (declining to rely on characterization of crime under state law "because it would mean that a person convicted of exactly the same activity would, or would not, receive a sentence enhancement, depending on how the particular state characterized the crime").

Our reasoning is largely consonant with that expressed by the Ninth Circuit in *United States v. Becerril-Lopez*, 541 F.3d 881 (9th Cir. 2008). There, the Ninth Circuit was faced with the same question we face today: whether California Penal Code section 211 is a crime of violence for purposes of § 2L1.2. *Id.* at 890. Among other arguments not raised here, the appellant asserted section 211 was overbroad compared to generic

robbery because it encompassed threats to property. *Id.* at 891. The court agreed section 211 is broader than generic robbery but concluded that "if a conviction under Cal. Penal Code § 211 involved a threat not encompassed by generic robbery, it would necessarily constitute generic extortion and therefore be a crime of violence." *Id.* at 892. The Ninth Circuit accordingly upheld the application of § 2L1.2's sentencing enhancement based on a conviction under California Penal Code section 211.

Mr. Castillo attacks this conclusion on three fronts. He first argues a conviction under section 211 cannot satisfy the generic definition of extortion because section 211 requires a taking of property against the victim's will, whereas generic extortion requires a taking "with [the victim's] consent." But "consent" for extortion purposes must be "induced by the wrongful use of force, fear, or threats." *Scheidler*, 537 U.S. at 410. We see no meaningful difference in this context between a taking of property accomplished against the victim's will and one where the victim's consent is obtained through force or threats. "[I]n spite of the different expressions, there is no difference here, for both crimes equally require that the defendant's threats induce the victim to give up his property, something which he would not otherwise have done." 3 LaFave, *supra* § 20.4(b).

Second, Mr. Castillo casts the Ninth Circuit decision in *Becerril-Lopez* as a "considerable innovation," unsupported by authority, that permits the court to "create a Frankenstein monster out of various elements of the enumerated crimes whenever none of the enumerated offenses provide the desired result." But this argument misunderstands both *Becerril-Lopez* and the analysis we employ here. Section 2L1.2 directs us to consider whether the defendant's prior felony conviction was for a crime of violence. Our

10

determination that a conviction under section 211 in either of its forms constitutes a crime of violence requires nothing more than the unremarkable observation that section 211 prohibits conduct that would in other jurisdictions be considered one of two different—but closely related—crimes that are each crimes of violence within the meaning of § 2L1.2. Nothing in this reasoning requires or endorses the creation of Mr. Castillo's "Frankenstein" offense—a composite or hybrid generic crime that borrows some, but not all, of the elements of one crime of violence and combines them with elements of another enumerated crime of violence. Instead, our approach requires consideration only of whether the state statute can fairly be considered to encompass "several different crimes" and, if so, whether all of those crimes are nevertheless crimes of violence.[2] *See Descamps*, 133 S. Ct. at 2284–85.

Third, Mr. Castillo seeks to cast doubt on the central premise of our analysis by setting forth hypothetical crimes that, though punishable under section 211, would not meet the definition of generic robbery or generic extortion. As a general rule, showing

---

[2] A statute that "lists multiple, alternative elements, and so effectively creates several different . . . crimes" is generally deemed "divisible" and may call for the district court to apply a "modified categorical approach" to identify the defendant's crime of conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). "If at least one, but not all of those crimes matches the generic version, a court needs a way to find out which the defendant was convicted of." *Id.* at 2285. But where all conduct that falls within the state statute "matches the generic version" of an enumerated offense—such as here, where all crimes contemplated by § 211 correspond to crimes of violence under § 2L1.2—it is unnecessary for the court to consider which specific crime was committed to determine that a defendant's conduct fell within the criteria of the federal statute. *Id.; accord United States v. White*, 782 F.3d 1118, 1131 (10th Cir. 2015) (observing that the modified categorical approach applies where a State statute "criminalizes several types of activity, not all of which fall within the criteria listed in the federal statute"). Application of the modified categorical approach is therefore neither necessary nor, under *Descamps*, appropriate here.

11

that a crime does not meet a generic definition requires more than "application of legal imagination to a state statute's language." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). Thus, a defendant must ordinarily show a "realistic probability" that the state would apply its statute to the proposed conduct, and must do so by directing the court to "other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* Mr. Castillo has not done so here.

## IV.  CONCLUSION

The district court did not err in concluding that a conviction under section 211 is a crime of violence. We therefore affirm Mr. Castillo's sentence.