RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0159p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DAMON TONYADO RAINES,

　　　　　　　　　　*Petitioner-Appellant*,

　　*v.*

UNITED STATES OF AMERICA,

　　　　　　　　　　*Respondent-Appellee*.

No. 17-1457

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
Nos. 1:12-cr-00016; 1:16-cv-00498—Paul Lewis Maloney, District Judge.

Decided and Filed: July 31, 2018

Before: COLE, Chief Judge; GIBBONS and BUSH, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Davin M. Reust, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. Damon Tonyado Raines, Three Rivers, Texas, pro se.

The court delivered a PER CURIAM opinion. COLE, C.J., (pp. 13–17), delivered a separate concurring opinion.

─────────────────

## OPINION

─────────────────

PER CURIAM. Damon Tonyado Raines, a federal prisoner proceeding pro se, appeals a district court judgment denying his 28 U.S.C. § 2255 motion to vacate his sentence. This case has been referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a).

In 2012, Raines pleaded guilty to one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). The district court concluded that Raines was subject to a statutory minimum term of 180 months of imprisonment under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B), because he had three prior convictions for controlled substance offenses or violent felonies. Specifically, Raines had a 1991 Michigan conviction for assault with intent to do great bodily harm less than murder, a 2002 federal conviction for distributing cocaine base, and a 2002 federal conviction for collecting credit by extortionate means, in violation of 18 U.S.C. § 894(a)(1). The district court sentenced him to a total term of 180 months of imprisonment, and we affirmed.

On May 11, 2016, Raines filed a § 2255 motion to vacate, in which he argued that he should not have been sentenced as an armed career criminal because his 2002 convictions should have been counted as a single offense and he, therefore, did not have the requisite three predicate offenses. But Raines already raised that issue on direct appeal, and we affirmed, holding that his 2002 convictions were separate qualifying convictions because they arose from separate criminal episodes, even though both convictions were entered on the same day. *United States v. Raines*, Nos. 12-2431/12-2432 (6th Cir. June 11, 2013) (order).

Raines also challenges whether his prior convictions are violent felonies "after *Johnson*," purporting to lodge a claim based on *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held the ACCA's residual clause to be unconstitutionally vague. The district court denied Raines's § 2255 motion, concluding that each of Raines's predicate convictions qualified as either a serious drug offense or violent felony without reliance on the ACCA's now-invalidated residual clause. Specifically, the district court held that Raines's assault conviction qualified under the ACCA's force clause, Raines's drug-distribution conviction qualified as a serious drug offense, and Raines's collecting-credit-by-extortion conviction qualified under the ACCA's enumerated-crimes clause. *Raines v. United States*, No. 1:16-cv-498, 2017 WL 104093, at *2–3 (W.D. Mich. Jan. 11, 2017) ("[T]he 2002 conviction for collection of credit by extortionate means in violation of 18 U.S.C. § 894(a)(1) is a 'violent felony' because it is a crime of 'extortion' under 18 U.S.C. § 924(e)(2)(B)(ii).").

The district court denied Raines a certificate of appealability, but we granted one on the following issues: (1) whether Raines's *Johnson* claim is properly before this court on appeal; and (2) whether Raines is entitled to relief based on *Johnson* because his 2002 conviction under 18 U.S.C. § 894(a)(1), for collecting credit by extortionate means, was counted as a violent felony under the ACCA's now-invalidated residual clause. *Raines v. United States*, No. 17-1457 (6th Cir. Oct. 26, 2017) (order).

On appeal, Raines argues that the *Johnson* issue is properly before us and that we must review the merits of the district court's decision. He also argues that his prior conviction for collecting credit by extortionate means in violation of § 894(a)(1) should not have been counted as a violent felony under the ACCA because it is not covered by the use-of-force clause and it is not equivalent to the generic crime of "extortion."

The government argues that Raines cannot claim an entitlement to relief under *Johnson*: because Raines's sentencing record is silent as to which of the ACCA's clauses the district court relied upon in treating his extortionate-collection charge as a violent felony, Raines cannot show that the district court relied specifically on the residual clause. The government argues that

> it is not enough for a defendant seeking collateral relief simply to assert that his claim arises under *Johnson*; he must show that more likely than not, he was sentenced as an armed career criminal based on the residual clause. *E.g., Beeman v. United States*, 871 F.3d 1215, 1224 (11th Cir. 2017) (defendant has the "burden of establishing that he, in fact, was sentenced as an armed career criminal . . . solely because of the residual clause"); *United States v. Snyder*, 871 F.3d 1122, 1129 (10th Cir. 2017) (courts should take a "snapshot" of law at the time and find burden unsatisfied if there was no need to rely on residual clause at the time); *but see United States v. Winston*, 850 F.3d 677, 682 (4th Cir. 2017) (declining to impose burden on movants); *United States v. Geozos*, 870 F.3d 890, 895 (9th Cir. 2017) (same); *cf. United States v. Taylor*, 873 F.3d 476, 481 (5th Cir. 2017) (discussing but declining to decide burden issue).

Appellee's Br. 11–12.

The cases cited by the government reflect a circuit split, which, at the time of the government's filing of its brief, did not include our circuit. But we have since entered the fray, siding with the Tenth and Eleventh Circuits in putting a *Johnson* claimant up to the seemingly improbable task of proving that his sentencing judge "relied only on the residual clause in

sentencing" him.  *Potter v. United States*, 887 F.3d 785, 787 (6th Cir. 2018).  *See also Dimott v. United States*, 881 F.3d 232, 234, 241–42 (1st Cir. 2018), *pet. for cert. filed sub nom. Casey v. United States* (U.S. Mar. 8, 2018) (No. 17-1251) (creating a three-way circuit split by dismissing petitioners' claims as "untimely" where they brought putative *Johnson* claims within one year of *Johnson* but could not "establish by a preponderance of the evidence . . . that [their] ACCA sentence[s] rested on the residual clause").  This burden, of course, presents a tall order when a movant's sentencing record (like Raines's and Potter's) is silent as to which ACCA clause a district court applied.  And it makes sense that a movant's sentencing record (like Raines's) would be silent as to which specific ACCA clause was being applied when the sentence was handed down well before the Supreme Court's decisions in *Descamps v. United States*, 570 U.S. 254 (2013), *Johnson*, 135 S. Ct. 2551, and *Mathis v. United States*, 136 S. Ct. 2243 (2016).  *But see United States v. Quarles*, No. 1:14-cr-29-RJJ, R.40 at 20 (W.D. Mich. Mar. 5, 2015) (transcript of sentencing hearing) (expressly relying on residual clause and declining to invoke enumerated-offenses clause while observing that the Supreme Court had granted certiorari in *Johnson* and opining that imposing an ACCA enhancement under both clauses might pose a "severance problem" in the event that the Court invalidates the residual clause).

Nevertheless, *Potter* is precedential, so we must determine whether it precludes Raines from asserting his *Johnson* claim.  For two reasons, it does not.

First, *Potter* involved a movant on a *second-or-successive* motion for relief.  *Potter*, 887 F.3d at 787.  Such a movant faces a statutory hurdle that first-time movants do not face: the habeas statute "permits a second collateral attack only if it rests on new facts or 'a new rule of *constitutional law*, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.'"  *Ibid.* (citing 28 U.S.C. §§ 2255(h), 2244(b)) (emphasis added).  In *Potter*, we relied on that provision to hold that Potter could not base his entitlement to relief on *Mathis*, 136 S. Ct. 2243 (analyzing the ACCA's enumerated-offenses clause), because "*Mathis* involved an old rule of statutory law, not a new rule of constitutional law."  *Potter*, 887 F.3d at 788.  The Supreme Court's decision in *Johnson* did indeed announce a new rule of constitutional law retroactively applicable to cases on collateral review.  *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).  But because Potter could not show that his second collateral attack rested

solely on *Johnson itself*—that is, that the district court sentenced him based on the residual clause invalidated by *Johnson* and not, for example, based on an interpretation of the use-of-force clause or enumerated-offenses clause that a decision like *Mathis* may have called into question—Potter could not clear 28 U.S.C. § 2255(h)'s statutory hurdle to raising that collateral attack in the first instance.  That hurdle does not apply to Raines, whose first collateral attack may rest "upon the ground that the sentence was imposed in violation of the Constitution *or laws* of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a) (emphasis added).[1]

Second, *Potter*'s record was not entirely silent as to which clause the district court used to treat his prior burglary conviction as a violent felony under the ACCA.  Indeed, Potter's sentencing judge was the same judge who denied Potter's motion for postconviction relief and, in so doing, averred that "[Potter] *was not sentenced* under the residual clause."  *United States v. Potter*, No. 7:16-41-DCR, 2016 WL 6134533, at *5 (E.D. Ky. Oct. 20, 2016) (emphasis added). True, Potter's sentencing judge did not make this clear *at the time of sentencing*, but he had no reason to do so when Potter was sentenced in 2003.  As we noted in affirming the district court, "[i]t is difficult to think of a better source of information about what happened" when Potter was sentenced than "the same district court judge who sentenced him."  *Potter*, 887 F.3d at 786, 788. So, as a matter of *fact*, we deferred to the district court's assertion that, *at the time of sentencing*, the district court relied upon the enumerated-crimes clause and not the residual clause to support Potter's ACCA enhancement.

Here, the district court, in denying Raines's motion for relief, did not state for the factual record what clause it had used at Raines's sentencing to treat Raines's extortionate-collection

---

[1]Moreover, even in the second-or-successive context, *Potter*'s observation that the petitioner "offer[ed] no evidence that the district court relied *only* on the residual clause" in sentencing him is dicta.  887 F.3d at 787 (emphasis added).  As we explain, Potter's record, including statements by the sentencing judge, showed conclusively that Potter was *not* sentenced under the residual clause, meaning the outcome would have been the same.  Therefore, this statement from *Potter* may not always apply even for a second-or-successive motion for relief.  Consider, for example, a case in which, pre-*Johnson*, a panel of this court (on direct appeal or first habeas) rejected an enumerated-clause argument on the ground that the residual clause would apply anyway and thus it need not consider the other ground.  Then, after that decision, *Johnson* comes out, leaving it hard to say whether the panel (or the district judge) relied *only* on an unconstitutional ground in denying relief.  In these circumstances, at least, it is an open and fair question whether the petitioner's claim could go forward.

conviction as a violent felony. Rather, the district court—reaching and deciding the merits of Raines's *present* motion for relief—consulted caselaw (including post-sentencing decisions) to conclude as a matter of *law* that Raines's three prior convictions count as ACCA predicates under clauses other than the residual clause. *Raines*, 2017 WL 104093, at *2–3. This is a legal determination that we review de novo, and *Potter* works no change to that review. *See Braden v. United States*, 817 F.3d 926, 930 (6th Cir. 2016) ("This court reviews *de novo* a district court's determination regarding whether a prior conviction constitutes a 'violent felony' under the ACCA." (citations omitted)); *see also Rutherford v. Columbia Gas*, 575 F.3d 616, 624 (6th Cir. 2009) ("[N]o subsequent panel overrules a published opinion of a previous panel." (citing 6 Cir. R. 206(c))). Thus, *Potter* stands for the proposition that a 28 U.S.C. § 2255 movant seeking relief under *Johnson* must show "evidence that the district court relied only on the residual clause in" making the ACCA determination under attack if (1) the movant is bringing a second or successive motion and (2) there is evidence that the movant was sentenced under a clause other than the residual clause, such as the sentencing judge's averment that the movant was indeed sentenced under another clause. Those two conditions do not apply to Raines, so *Potter* does not preclude our de novo review of the merits of Raines's claim—that is, our review of whether Raines's extortionate-collection conviction counts as an ACCA predicate.

\*　　　\*　　　\*

Still, the government contends that Raines forfeited his *Johnson* argument by failing to raise it in the district court. But Raines cited *Johnson* throughout his supporting brief and noted that the residual clause had been declared void for vagueness. He also stated in his reply brief that he was, in fact, arguing that his prior convictions should not have been considered violent felonies in light of *Johnson*. In light of Raines's pro se status, this was sufficient to raise a *Johnson* claim. *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004). Furthermore, even if the district court had raised the *Johnson* issue sua sponte, "there can be no forfeiture 'where the district court[, despite a party's failure to press an argument,] nevertheless addressed the merits of the issue.'" *United States v. Clariot*, 655 F.3d 550, 556 (6th Cir. 2011) (quoting *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707 (D.C. Cir. 2009)). "When a district court resolves an issue, the losing party can challenge it." *Clariot*, 655 F.3d at 556. Accordingly,

because the district court addressed the merits of Raines's *Johnson* claim, it is properly before us on appeal.

The government also argues that Raines procedurally defaulted his *Johnson* claim by failing to raise it initially on direct appeal. In § 2255 proceedings, "the general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). But here, Raines had cause for failing to raise his *Johnson* claim on direct appeal. After all, *Johnson* was not decided until June 26, 2015, well after Raines's direct appeal was decided on June 11, 2013. Because Raines's *Johnson* claim is meritorious for reasons discussed below, he has made the requisite showing of prejudice as well.

Next, the government contends that Raines's *Johnson* claim is untimely. Raines filed his § 2255 motion on May 11, 2016, and the district court construed that motion as raising a claim based on *Johnson*. *Johnson* was decided on June 26, 2015, and was made retroactively applicable to cases on collateral review. *See Welch*, 136 S. Ct. at 1265, 1268. Because Raines filed his § 2255 motion within one year of the *Johnson* decision, his § 2255 motion was timely under 28 U.S.C. § 2255(f)(3).

The government also argues that we should not address the merits of Raines's *Johnson* claim due to the concurrent-sentence doctrine. It contends that, even without the ACCA enhancement, Raines would still be considered a career offender under the United States Sentencing Guidelines because he has at least two prior convictions for controlled-substance offenses or crimes of violence. Under the concurrent-sentence doctrine, "an appellate court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction," the defendant will suffer no collateral consequence from the conviction, and the issue does not involve a significant question. *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989); *see United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992).

Under the career-offender guideline, USSG § 4B1.1, Raines was subject to a total offense level of 30 and a criminal history category of VI. Those calculations yield a guidelines

imprisonment range of 168 to 210 months of imprisonment.  USSG Ch.5, Pt.A (Sentencing Table).  But the Guidelines are not binding, and, in any event, the low end of this range is below the statutory minimum (180-month) sentence that Raines received under the ACCA.  Thus, the concurrent-sentence doctrine does not bar review.  We now proceed to the merits of Raines's motion.

*             *             *

When reviewing a district court's denial of a § 2255 motion, we review factual findings for clear error and legal conclusions de novo.  *Braden*, 817 F.3d at 929.  Under the ACCA, a person who violates § 922(g) and has three prior convictions for violent felonies, serious drug offenses, or both, is subject to a fifteen-year mandatory minimum sentence.  18 U.S.C. § 924(e)(1).  A violent felony is defined as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another"; (2) "is burglary, arson, or extortion, [or] involves [the] use of explosives"; or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B).  The third clause of this subsection is the "residual clause," which the Supreme Court invalidated as unconstitutionally vague in *Johnson*.  135 S. Ct. at 2563.  The Supreme Court clearly stated that its decision in *Johnson* "does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony."  *Ibid.*  Thus, if Raines's § 894(a)(1) conviction falls under the use-of-force clause or the enumerated-offenses clause, it remains a proper predicate offense in the wake of *Johnson*.

Raines's judgment of conviction shows that he was convicted under subsection (a)(1) of § 894.  That subsection states that "[w]hoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means . . . to collect or attempt to collect any extension of credit . . . shall be fined under this title or imprisoned not more than 20 years, or both."  18 U.S.C. § 894(a)(1).  "An extortionate means is any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person."  18 U.S.C. § 891(7).

When determining whether an offense constitutes a violent felony for purposes of the ACCA, we must first determine whether the statute in question is "divisible." *See Mathis*, 136 S. Ct. at 2249; *United States v. Rafidi*, 829 F.3d 437, 444 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 2147 (2017). If the statute is divisible, we may apply a "modified categorical approach" to determine which of several alternative elements "played a part in the defendant's prior conviction." *Mathis*, 136 S. Ct. at 2256. For purposes of the use-of-force clause, the relevant element is "the use of any extortionate means." 18 U.S.C. § 894(a)(1). That term is defined by § 891(7), which is indivisible under *Mathis* because it simply "lists examples to clarify a term, as opposed to listing alternative elements to define multiple crimes." *United States v. Stitt*, 860 F.3d 854, 862 (6th Cir. 2017), *cert. granted*, No. 17-765, 2018 WL 1901589, at *1 (U.S. Apr. 23, 2018); *see* 18 U.S.C. § 891(7). Accordingly, we apply the categorical approach. *Cf. United States v. Harris*, 853 F.3d 318, 320 (6th Cir. 2017) (addressing the definition of a "crime of violence" under USSG § 4B1.2(a)'s use-of-force clause). "That means we look only to the offense's statutory definition along with controlling judicial interpretations of it, rather than at the facts underlying the conviction, to determine whether the offense is a [violent felony]." *Ibid.*

Under the categorical approach, Raines's prior § 894(a)(1) conviction does not qualify as a violent felony under § 924(e)'s use-of-force clause because the offense does not "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Instead, the offense merely requires the use of, or the threat to use, "violence *or other criminal means* to cause harm to the person, *reputation*, or *property* of any person." 18 U.S.C. § 891(7) (emphasis added). Thus, the statute could be violated by a non-violent criminal act that causes harm to a person's reputation or property. Because the offense does not fall within § 924(e)'s use-of-force clause, Raines's ACCA enhancement was proper only if the offense qualifies as a violent felony under the enumerated-offenses clause.

A prior conviction qualifies as an enumerated offense, though, only if the elements of the offense "are the same as, or narrower than," the elements of the generic form of an enumerated offense—in this case, extortion. *Mathis*, 136 S. Ct. at 2248. The generally accepted generic definition of the crime of extortion is "obtaining something of value from another with his

consent induced by the wrongful use of force, fear, or threats." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 410 (2003) (quoting *United States v. Nardello*, 393 U.S. 286, 290 (1969)); *see United States v. Montiel-Cortes*, 849 F.3d 221, 228 (5th Cir.), *cert. denied*, 137 S. Ct. 2251 (2017); *United States v. Gardner*, 823 F.3d 793, 802 n.5 (4th Cir. 2016); *United States v. Castillo*, 811 F.3d 342, 346 (10th Cir. 2015); *United States v. Dixon*, 805 F.3d 1193, 1196 n.3 (9th Cir. 2015).

Section 894(a)(1) criminalizes a broader range of conduct than the generic form of extortion. First, whereas a generic extortion offense requires a taking with the victim's (induced) consent, § 894(a)(1) encompasses non-consensual takings. *Compare Scheidler*, 537 U.S. at 410, *with* 18 U.S.C. § 891(7). Although the government argues that § 894(a)(1) covers only consensual takings because it "requires [a] defendant to 'induce repayment,'" the statute contains no such requirement. Instead, it simply requires (1) that the defendant knowingly participate "in any way" or conspire to participate in any way (2) in the use of extortionate means (3) to collect or attempt to collect an extension of credit. 18 U.S.C. § 894(a)(1). Section 891(7), the statute defining "extortionate means," also does not include the inducement of consent as an element. The only requirement is that the defendant use, or threaten to use, violence or other criminal means to cause harm to a person or a person's reputation or property. 18 U.S.C. § 891(7).

The government cites several cases to support its contention that § 894(a)(1) could nevertheless be considered a generic crime of extortion. In *Castillo*, the Tenth Circuit held that it saw "no meaningful difference . . . between a taking of property accomplished against the victim's will and one where the victim's consent is obtained through force or threats." 811 F.3d at 348. Similarly, in *United States v. Becerril-Lopez*, 541 F.3d 881, 892 n.9 (9th Cir. 2008), the Ninth Circuit concluded that "[t]he 'with consent' element of generic extortion is not inconsistent with the 'against the will' element of a [California statute]." *See also United States v. Valasquez-Bosque*, 601 F.3d 955, 959 (9th Cir. 2010) (citing the holding in *Becerril-Lopez*). The government also cites *Montiel-Cortes*, but in that case the Fifth Circuit addressed a statute that required force to be "used to compel acquiescence to the taking of or escaping with the property." 849 F.3d at 228 (quoting Nev. Rev. Stat. § 200.380). Section 894(a)(1) does not contain an analogous requirement.

*Castillo* and *Becerril-Lopez* do not properly apply the categorical approach described in *Mathis*, but we must. The difference between a taking against a victim's will and a taking with the victim's consent may not be a "meaningful one" in the Tenth Circuit's view, but a difference nevertheless exists that suffices under the Supreme Court's teachings on how we must interpret the ACCA. Under the categorical approach, "if the crime of conviction covers any more conduct than the generic offense, then it is not [an enumerated offense]." *Mathis*, 136 S. Ct. at 2248. Here, the generic definition of extortion requires a victim's induced consent. Section 894(a)(1) does not. Section 894(a)(1) therefore does not qualify as a generic extortion offense under the categorical approach. The Fourth Circuit has recognized as much, noting that a crime that "involves the *non-consensual* taking of money or property from another" cannot qualify as a generic extortion crime because it does not involve a taking with the victim's *induced* consent. *Gardner*, 823 F.3d at 802 n.5.

Furthermore, even setting aside the element of induced consent, § 894(a)(1) is broader than the generic offense of extortion in another material respect. While the generic form of extortion requires that the defendant actually obtain something of value, *see Scheidler*, 537 U.S. at 410, the language of § 894(a)(1) could encompass a situation in which the defendant obtains an extension of credit for a third party because it simply requires that the defendant participate or conspire to participate *in any way* in the collection of an extension of credit. 18 U.S.C. § 894(a)(1). The result—that a conviction for what by all rights sounds like extortion is, in fact, not "extortion"—may be vexing (particularly when we must turn a blind eye to whether the movant in fact committed the elements of generic extortion), but after thirty years of the ACCA it is by no means anomalous. *Cf. Stitt*, 850 F.3d at 869–70 (Boggs, J., concurring) (using modified Venn diagrams to illustrate that even common law burglary of a dwelling may not count, categorically, as generic burglary under the Supreme Court's ACCA jurisprudence).

Accordingly, the district court erred in concluding that Raines's § 894(a)(1) offense qualifies as an enumerated offense under the ACCA. Because the offense cannot count under the use-of-force clause or the enumerated-offenses clause, it could necessarily count only under the now-invalidated residual clause. Raines is therefore entitled to relief under *Johnson*.

Accordingly, we **DENY** Raines's request for oral argument, **REVERSE** the district court's judgment denying his § 2255 motion, and **REMAND** to the district court so that Raines may be resentenced without the ACCA enhancement.

---

**CONCURRENCE**

---

COLE, Chief Judge, concurring.  I join the court's opinion in full.  As it explains, *Potter v. United States* does not apply outside of second-or-successive habeas petitions.  887 F.3d 785 (6th Cir. 2018).  I write separately to note that if *Potter*'s dicta that a second-or-successive habeas petitioner must show that a sentence was based *only* on the residual clause were read as law, then it would collide with *Welch v. United States*, 136 S. Ct. 1257 (2016).

When the Supreme Court announced *Johnson* and rushed to make it retroactive in *Welch*, it did not do so merely to tantalize habeas petitioners with the possibility of relief for an unconstitutional sentence.  Yet if *Potter* were read to require a petitioner to show that an Armed Career Criminal Act ("ACCA") enhancement was imposed solely under the residual clause, then for many habeas petitioners in this circuit, tantalize is all that *Johnson* and *Welch* will do.  It is a "tall order" for a petitioner to show which ACCA clause a district court applied when the sentencing record is silent—a burden all the more unjust considering that silence is the norm, not the exception.  Maj. Op. at 4.

This fate for federal prisoners was not handed down from Mount Olympus.  To the contrary, the Supreme Court's decision in *Welch* forecloses such a myopic understanding of what it necessary to present a "constitutional" claim to clear the gate-keeping hurdles of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  That is because the Court in *Welch* found that the petitioner had shown the denial of a "constitutional" right even though he challenged an ACCA enhancement as invalid for both constitutional and statutory reasons.

To see why *Welch* forecloses such a reading of *Potter* is simple to understand, but hard to get to: it requires a journey across the proverbial Styx and into the world of AEDPA.  For federal habeas petitioners, AEDPA contains two types of gates that habeas petitioners must pass to proceed further.  The first gate, at issue in *Welch*, is a threshold for when a habeas petitioner can appeal the denial of habeas relief by a district court.  That gate requires a petitioner to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Miller-EL v.*

*Cockrell*, 537 U.S. 322, 337 (2003). The second gate, at issue in *Potter*, is a threshold that a petitioner who has previously filed a petition must cross to file a so-called second-or-successive petition. And that gate, like the first, requires a petitioner's motion "to contain . . . a new rule of constitutional law." 28 U.S.C. § 2255(h).

So what does *Welch* have to do with this? *Welch* arose in the wake of *Johnson*, when federal prisoners who had already exhausted their direct appeals rushed to use *Johnson* to challenge their ACCA enhancements in habeas proceedings. Welch, whose challenge dealt with whether a Florida conviction for "strong-arm robbery" qualified as a crime of violence, was the first of these collateral challengers to reach the Supreme Court. *Welch*, 136 S. Ct. at 1262.

Like Raines, the petitioner here, there was a wrinkle in Welch's claim. Welch did not show that he was sentenced solely under the residual clause. In fact, he could not make this showing because the sentencing court expressly found that his "violent felony" under review counted as a violent felony under both the residual clause and the elements clause. *Id.* So, to be entitled to relief, Welch would have had to convince a habeas court that his sentence was invalid under both the residual clause and the elements clause. To put this in the language of our cases, this meant that Welch was not just asserting a claim under a "new rule of constitutional law" (his residual-clause claim); he was also asserting a claim under "an old rule of statutory law" (his elements-clause claim). *See Potter*, 887 F.3d at 788 (6th Cir. 2018) (citing *In re Conzelmann*, 872 F.3d 375, 376–77 (6th Cir. 2017)).

And, as noted above, there was still another wrinkle to the Supreme Court's review: *Welch*'s "somewhat unusual" posture. *Welch*, 136 S. Ct. at 1263. As an appeal of a single-judge order denying Welch a certificate of appealability, the question before the Supreme Court was whether Welch "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Brushing these wrinkles aside, the Supreme Court found that Welch had made a substantial showing of the denial of a "constitutional" right. *See Welch*, 136 S. Ct at 1263. It reached this conclusion even though Welch did not show he was sentenced solely under the residual clause and was not challenging his ACCA enhancement solely under that clause. It then

held *Johnson* to be retroactive and vacated the court-of-appeals order denying Welch a certificate of appealability of his habeas petition. *Welch*, 136 S. Ct. at 1268. To do so, it concluded not just that he had shown the denial of a "constitutional" right, but that he had shown "reasonable jurists could at least debate whether [a petitioner] is entitled to relief"—in other words, that it was at least up for debate that Welch would prevail on *both* his constitutional and statutory claims. *Id.*

To sum things up, under *Welch* a habeas petitioner shows a denial of a "constitutional" right and that it is at least up for debate that he is entitled to relief when he brings a challenge under both *Johnson* and another ACCA prong.

This brings us to the other gate for federal habeas petitioners—28 U.S.C. § 2255(h). This gate can be cleared in the same way that a habeas petitioner can clear the certificate-of-appealability gate: by filing a petition that contains a claim with a "constitutional" right. Under the second-or-successive standard, a petitioner's motion "must be certified . . . to contain . . . a new rule of constitutional law, made retroactive to cases on collateral review." *Id.*

Since *Welch* turned on what a petitioner needed to do to allege the denial of a "constitutional" right, it also applies to petitioners bringing second-or-successive petitions because both gates tether passage to showing a "constitutional" error. If a petition that pairs a new-rule-of-constitutional-law challenge and an old-rule-of-statutory-law challenge satisfies § 2253(c)'s "constitutional" right requirement as *Welch* telegraphs, then such a petition also satisfies § 2255(h). It would be inconsistent with *Welch* to say that a petitioner must show a sentence was *only* under the residual clause.

There are, of course, some differences to the two gates. To grant a certificate of appealability, the appeals court must find that "reasonable jurists could at least debate whether [a petitioner] is entitled to relief," a requirement not at issue for a second-or-successive petition. *Welch*, 136 S. Ct. at 1268. On the other hand, a second-or-successive petition much show that the constitutional rule at issue is "new" and that the Supreme Court has made it retroactive to cases on collateral review. 28 U.S.C. § 2255(h)(2). But the Supreme Court took care of that in *Welch*, so these differences amount to quibbles for claims under *Johnson*.

Some of our cases have flirted with the idea that a habeas claim could be dismissed under § 2244(b)(4) for failing to comply with § 2255(h). But that reading is unmoored from AEDPA. Under § 2244(b)(4), a district court must dismiss "any claim" in a second-or-successive application that does not satisfy "the requirements of this section," meaning § 2244. *See United States v. Satterwhite*, 893 F.3d 352 (6th Cir. 2018) (adopting the Government's reading of "section"). More to the point, § 2244(b)(4) focuses on what a "claim" requires, while § 2255(h) focuses on what a "motion must . . . contain." This "difference in language"—in one section, what a claim requires; in the other, what a motion requires—"demands a difference in meaning." *Gallo v. Moen Inc.*, 813 F.3d 265, 270 (2016).

If a petitioner in Welch's boat—a conviction that qualifies under two ACCA prongs—can clear the "constitutional" gate to bring a habeas petition, then a petitioner with a murkier record should also be entitled to clear that gate and bring a second-or-successive petition. When a petitioner's sentencing record is unclear as to which clause the petitioner was sentenced under, the petitioner satisfies the "new constitutional rule" requirement so long as the challenge includes a claim under *Johnson*. Indeed, petitioners with an ambiguous sentencing record have an even better argument for bringing a petition because any *Johnson* error would not be harmless (as it could be for petitioners who were expressly sentenced under another clause).

It is no surprise that other case law points the same way. Applying the so-called *Stromberg* principle, the Supreme Court has explained that "where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground." *Griffin v. United States*, 502 U.S. 46, 53 (1991); *see also Stromberg v. California*, 283 U.S. 359 (1931). If a defendant's sentence "*may have rested on*" a particular ground that "the Constitution forbids," then it is an easy extension of *Stromberg* to see that a sentence is invalid also. *Griffin*, 502 U.S. at 53.

Likewise, *Potter* seemed motivated in part by a concern that prisoners would deliberately refrain from objecting to their presentence report at sentencing if they did not have the burden to prove that they were only sentenced under the residual clause. But the Supreme Court recently rejected a similar "strange incentives" rationale as "highly speculative" and "fail[ing] to account

for the realities at play in sentencing proceedings." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1910–11 (U.S. 2018).

AEDPA makes it hard enough for habeas petitioners unquestionably serving illegal sentences to obtain relief.  We should not make it harder.  To be consistent with *Welch*, we should not require a second-or-successive habeas petitioner to show that a sentence was based only on the residual clause.