RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0212p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

JODI TAPPLY, JEANNETTE BUSCHMAN, MICHAEL
PARTIPILO, BARBARA LESTER, and VICKI MEYERHOLZ,
on behalf of themselves and all others similarly
situated,

        *Plaintiffs-Appellants,*

    *v.*

WHIRLPOOL CORPORATION,

        *Defendant-Appellee.*

No. 23-1666

─────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:22-cv-00758—Jane M. Beckering, District Judge.

Argued: October 29, 2024

Decided and Filed: August 6, 2025

Before: MOORE, COLE, and LARSEN, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Jennifer Bennett, GUPTA WESSLER, San Francisco, California, for Appellants. Aileen M. McGrath, MORRISON & FOERSTER LLP, San Francisco, California, for Appellee. **ON BRIEF:** Jennifer Bennett, GUPTA WESSLER LLP, San Francisco, California, Robert Friedman, GUPTA WESSLER LLP, Washington, D.C., Alan M. Feldman, Edward S. Goldis, Zachary Arbitman, FELDMAN SHEPHERD WOHLGELERNTER TANNER WEINSTOCK & DODIG, LLP, Philadelphia, Pennsylvania, Michael F. Ram, Marie N. Appel, MORGAN & MORGAN, San Francisco, California, David H. Fink, Nathan J. Fink, FINK BRESSACK, Bloomfield Hills, Michigan, for Appellants. Aileen M. McGrath, Joel F. Wacks, MORRISON & FOERSTER LLP, San Francisco, California, Joseph R. Palmore, MORRISON & FOERSTER LLP, Washington, D.C., Alexandra Avvocato, MORRISON & FOERSTER LLP, New York, New York, for Appellee. Terri S. Reiskin, NELSON MULLINS RILEY & SCARBOROUGH LLP, Washington, D.C., Christopher Shaun Polston, NELSON MULLINS RILEY & SCARBOROUGH LLP, Atlanta, Georgia, Brian D. Schmalzbach, MCGUIREWOODS LLP,

Richmond, Virginia, Philip S. Goldberg, SHOOK HARDY & BACON L.L.P., Washington, D.C., for Amici Curiae.

COLE, J., delivered the opinion of the court in which MOORE, J., concurred. LARSEN, J. (pp. 20–24), delivered a separate dissenting opinion.

—————————

**OPINION**

—————————

COLE, Circuit Judge. Plaintiffs own ovens with front-mounted burner knobs manufactured by Whirlpool Corporation. In their class-action complaint, they allege that their ovens' stovetop burners are capable of "unintended actuation," whereby the stovetops ignite inadvertently. After plaintiffs sued Whirlpool, the district court found that plaintiffs had Article III standing to pursue their claims but dismissed the amended complaint for failure to state plausible claims for relief. Plaintiffs now appeal dismissal of their state common law and statutory claims, while Whirlpool argues the district court erred by not dismissing plaintiffs' amended complaint for lack of Article III standing. We affirm in part and reverse in part.

I.

Plaintiffs Jodi Tapply, Jeannette Buschman, Michael Partipilo, Barbara Lester, and Vicki Meyerholz span five states—Michigan, Illinois, Oklahoma, New Hampshire, and Nevada—and allege common law fraud and consumer protection claims under each state's laws. Plaintiffs purchased ovens with stovetop ranges, all of which were manufactured by defendant Whirlpool Corporation. The products are single-device ovens with stovetop burners, each containing front-mounted control knobs that actuate the burners atop the stove (the Range), which plaintiffs claim acuate unintentionally (the Defect). These front-mounted knobs—including (A) the Range's alleged Defect and (B) what Whirlpool knew about the Defect prior to sale—are the focus of plaintiffs' amended complaint.[1]

—————————

[1]Plaintiffs' putative class action also alleges a sub-class of consumers who purchased an electric Range. Plaintiffs, however, never owned an electric Range. The district court held that plaintiffs had standing at the Rule 12(b)(6) stage to assert claims on behalf of the sub-class of electric Range owners. Whirlpool has not appealed that ruling, and the parties do not address the electric Range in their briefing. Accordingly, issues regarding the putative electric Range sub-class are not before us.

A.

Plaintiffs purchased their respective Ranges between November 2018 and August 2021. Each plaintiff experienced their Range actuating unintentionally, noticing the Range was on only once they smelled gas in their home.

The front-mounted knobs were designed to turn the stovetop burners on with two discrete actions: the user pushes the knob inwards, then rotates it to the "on" position to actuate the burner. Because of the low level of force required to push the knobs in and the slight distance the knobs must turn to actuate the burners, however, plaintiffs' Ranges often turn on with one continuous motion. As such, their burners could be accidentally actuated with "the slightest touch, bump, or brush." (Am. Compl., R. 13, PageID 109, 111, 113, 114–15, 116, ¶¶ 27, 37, 46, 56, 65).

Plaintiffs allege that consumers, including themselves, expect their Ranges to be actuated by intentional and deliberate action and not by this inadvertent contact with the burner knobs. So, the unintended actuation has caused plaintiffs to be more cautious around the Range and constantly check the knobs to ensure they had not been switched on. For example, one plaintiff would have to pay particularly close attention to the Range if her grandchild with special needs would come to visit.

Additionally, the Range does not have any guards over the knobs to reduce the risk of unintentional actuation, nor does the oven door handle act as an effective barrier between a user and the knobs. Plaintiffs allege that the Defect is hazardous and renders the Range unsafe for use, though plaintiffs continue to use theirs. The Range's user manual states that failing to turn off all controls while not cooking "can result in death or fire." (*Id.* at PageID 122, ¶ 73.)

Plaintiffs further allege that, due to the Defect, they paid far more than the reasonable value of the Range and would have paid substantially less—or foregone purchase altogether—had Whirlpool disclosed the Defect.

B.

Plaintiffs' amended complaint alleges that, while plaintiffs did not know about the Defect at the point of sale, Whirlpool has known that the Range is inherently defective and unfit for its intended use due to unintentional actuation. These allegations of knowledge arise from incident reports submitted to the United States Consumer Product Safety Commission (CPSC) and consumer reviews on Whirlpool's website.

Plaintiffs include eight CPSC reports in their amended complaint, each of which CPSC sent to Whirlpool. These reports all involved consumers who accidentally actuated their Range burners consistent with the Defect. Dated between January 2017 and February 2020, each incident report discusses the Defect and the date the consumer's incident occurred, and the website plaintiffs cite lists the date CPSC sent each report to Whirlpool. Although plaintiffs cite only eight incident reports in their amended complaint, they allege these eight incident reports represent just a "sample" of numerous reports consumers submitted to CPSC and forwarded to Whirlpool. (*Id.* at PageID 126, ¶ 80.)

Consumers also posted reviews directly to Whirlpool's website. Plaintiffs include several reviews wherein consumers complained of unintended actuation from the alleged Defect and the resulting gas odor.

C.

Plaintiffs brought a class action complaint on behalf of a purported nationwide class of persons who purchased a Range with the Defect, as well as sub-classes for residents of Michigan, Illinois, Nevada, Oklahoma, and New Hampshire. Their amended complaint brings ten counts alleging violations of federal warranty law, fraud by omission, breach of express warranty, breach of the implied warranty of merchantability, unjust enrichment, and violation of state consumer protection statutes.

Whirlpool argued that the amended complaint should be dismissed for two reasons. First, Whirlpool argued that plaintiffs lacked Article III standing to bring their claims. Second, Whirlpool argued that plaintiffs' amended complaint failed to state a plausible claim for relief.

The district court rejected Whirlpool's first argument and found that plaintiffs alleged a sufficiently concrete injury to satisfy Article III's standing requirements. Nevertheless, the district court dismissed each of plaintiffs' claims for failure to state a claim.

Plaintiffs timely appealed the district court's dismissal of their state common law fraud and statutory consumer protection claims. In its response, Whirlpool argues that the court should reverse the district court's finding of Article III standing and dismiss plaintiffs' case on jurisdictional grounds, or, alternatively, affirm the district court's dismissal of plaintiffs' claims on the merits.

## II.

We apply de novo review to the legal conclusions reached by the federal district court in its dismissal of complaints under Federal Rule of Civil Procedure 12(b)(6). *Mattera v. Baffert*, 100 F.4th 734, 739 (6th Cir. 2024) (citing *United Food & Com. Workers Union-Emp. Pension Fund v. Rubber Assocs., Inc.*, 812 F.3d 521, 524 (6th Cir. 2016)). We "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 456 (6th Cir. 2011) (citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege sufficient facts that, taken as true, state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint states a plausible claim for relief where its alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III.

To survive Whirlpool's motion to dismiss, plaintiffs here must have plausibly alleged that (A) they suffered a concrete injury in fact to confer Article III standing; (B) Whirlpool knew of the Defect; (C) Whirlpool had a duty to disclose the Defect; and (D) Whirlpool violated several state-specific consumer protection statutes.

A.

Standing is a prerequisite to bringing claims in federal court. *United States v. Texas*, 599 U.S. 670, 675 (2023); U.S. Const. art. III, § 2, cl. 1. To have Article III standing, plaintiffs must demonstrate that (1) they suffered an injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable decision would redress their injury. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). An injury in fact must be both concrete and particularized, and actual or imminent. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Although Whirlpool does not contest that plaintiffs' claims are traceable and redressable, it argues the district court erred by finding that plaintiffs suffered a concrete injury-in-fact.

This court, sitting en banc, recently considered whether named plaintiffs in a consumer class action had suffered a concrete injury-in-fact. *See Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 314–15 (6th Cir. 2025) (en banc). In *Speerly*, the plaintiffs purchased vehicles that shuddered and shifted due to transmission issues, and each named plaintiff's vehicle suffered from the defect. *Id.* at 315. The court concluded that when a consumer buys a defective product and the defect manifests, the consumer has suffered a concrete injury-in-fact. *Id.* That is, the consumer has paid for something which they have not received—a defect-free product.[2]

Here, each of the named plaintiffs alleges that they suffered a concrete economic injury because they were deprived of the benefit of their bargain—a Range that turns on through only intentional and deliberate action. Each plaintiff alleges that their Range turned on unexpectedly, causing gas fumes to fill their homes. And each plaintiff alleges that, had Whirlpool disclosed the Defect, they would have paid far less for their Range or foregone the purchase altogether.

---

[2]This is not to say that a consumer who purchases a product with an unmanifested defect has not suffered an Article III injury. Indeed, this court in *Speerly* recognized that "[m]ost of our sister circuits" to confront this issue—the First, Fifth, Seventh, Ninth, and Eleventh—have permitted consumers to proceed with unmanifested defect claims under an overpayment theory of liability. 143 F.4th at 314 (collecting cases). Our precedent similarly supports a theory of standing for economic injuries where a product's defect has not yet manifested. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 856–57 (6th Cir. 2013); *see also Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 581 (6th Cir. 2013) (concluding that paying more for a product because of a company's misrepresentations was enough to demonstrate a concrete injury-in-fact). Regardless, *Speerly* made certain that each consumer whose product has manifested a defect has suffered a concrete Article III injury.

Thus, the amended complaint alleges that plaintiffs reasonably expected their Range to turn on through only deliberate action, and that their Range deviates from this expected benefit. Therefore, plaintiffs suffered concrete injuries that satisfy the requirements of Article III.

Whirlpool's arguments to the contrary are unpersuasive. Whirlpool concedes that overpayment for an allegedly defective product can satisfy Article III standing requirements, so long as a plaintiff properly pleads it. (Oral Arg. Rec. at 11:45–12:10.) Nevertheless, Whirlpool argues that, here, plaintiffs have not plausibly alleged they suffered a benefit of the bargain injury because they allege a perceived risk of *future* harm, rather than harm arising from a defect they bargained for. (*Id.* at 12:10–12:47.) In other words, Whirlpool argues that plaintiffs must have bargained for something that differs from the product they received at the point of sale. (*Id.* at 12:50–13:27.)

But that is precisely what plaintiffs allege. Plaintiffs allege that, at the point of sale, they reasonably expected that a Range would turn on through only deliberate action, rather than through inadvertent contact with the burner knobs. (Am. Compl., R. 13, PageID 119–20, ¶¶ 70–71 ("Consumers reasonably expect that Ranges can only be actuated by intentional and deliberate action. . . . The Ranges do not conform . . . to a reasonable consumer's expectation, because the knobs are susceptible to unintentional actuation rendering the Ranges dangerously defective.").) Thus, plaintiffs plausibly allege the Range did not conform to their expectations because of the Defect. As such, plaintiffs have standing.

B.

To properly bring a common law fraud claim, plaintiffs must plausibly allege Whirlpool knew of the Defect. *Smith v. Gen. Motors LLC*, 988 F.3d 873, 883–84 (6th Cir. 2021). The parties dispute whether plaintiffs must also allege that Whirlpool had pre-sale knowledge of the Defect's safety implications. Because we conclude that plaintiffs plausibly pleaded that the Defect has inherent safety risks, we need not address the parties' arguments regarding whether a safety-risk knowledge requirement applies. *See id.* at 888–89 (Stranch, J., concurring) (expressing concern with requiring knowledge requirement not only of a defect, but of a defect's safety risk at the motion to dismiss stage).

Before assessing the plausibility of plaintiffs' allegations, we must determine which pleading standard applies. Federal Rule of Civil Procedure 8 imposes a general pleading standard, whereas Rule 9(b) imposes a heightened "particularity" standard for fraud claims. Fed. R. Civ. P. 8, 9(b). Although Rule 9(b)'s text permits general allegations regarding knowledge, this court has previously imposed a particularity requirement to the knowledge element. *Compare Smith*, 988 F.3d at 883 ("Rule 9(b) . . . permits general allegations about the defendant's knowledge to avoid a 12(b)(6) motion to dismiss."), *with id.* at 884 ("In the context of this case under the standard in *Mross*, that means that Plaintiffs needed to 'state with particularity' factual allegations supporting the assertion that GM knew about the safety implications of the dashboard defect.").

*Smith* does not raise the pleading standard for knowledge in product defect claims. Rule 9(b) specifically excludes "knowledge" from heightened pleading requirements for fraud. Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). *Smith* was a unique vehicle defect case involving invited error, and we required the plaintiffs to state their knowledge allegations with particularity "under the standard in *Mross*." 988 F.3d at 879–80, 884 (discussing that the parties specifically requested the district court follow the standards in *Mross*, a related class action involving the same vehicle defect). *Mross*, however, explicitly declined to apply Rule 9(b)'s heightened pleading requirements to the knowledge element of fraud claims. *Mross v. Gen. Motors Co., LLC*, No. 15-C-0435, 2016 WL 4497300, at *6 (E.D. Wis. Aug. 25, 2016) ("I note that my conclusion that the plaintiffs have not adequately alleged GM's knowledge of the defect and of the safety risk is not based on the pleading requirement that the circumstances constituting fraud be stated with particularity. [] Rather, even when necessary to support a fraud claim, 'knowledge' may be alleged generally."). We will not impose a particularity requirement for knowledge allegations, as doing so would contravene the explicit text of Rule 9(b).

Here, although plaintiffs need not allege Whirlpool's knowledge with particularity, they nevertheless must allege sufficient facts to show Whirlpool plausibly knew of the Defect. Plaintiffs must allege more than conclusory statements that, upon information and belief, a

manufacturer reads third-party websites and monitors report databases. *See Smith*, 988 F.3d at 885.

Both plaintiffs and Whirlpool primarily analogize to *Smith*. In *Smith*, the plaintiffs alleged that consumer complaints of safety defects were posted on online vehicle websites and that customers had sent complaints to the National Highway Traffic Safety Administration (NHTSA) database. *Id.* The plaintiffs alleged that GM monitored those online forums and the NHTSA database, so GM must have known about the defects. *Id.*

This court rejected the *Smith* plaintiffs' arguments, holding that allegations of GM reading public message boards and monitoring the online NHTSA database were speculative absent supporting facts. *Id.* The allegations were not "'frequent enough that they were not lost in a sea of complaints and repairs amassing by the dozens each day.'" *Id.* (quoting *Roe v. Ford Motor Co.*, No. 2:18-cv-12528, 2019 WL 3564589, at *7 (E.D. Mich. Aug. 6, 2019)). Further, the alleged safety defect was a cracked dashboard which, if an airbag malfunctioned, "could turn the plastic dashboards into deadly projectiles during a crash." *Id.* at 875. Thus, the danger could only materialize if the dashboard cracked, the driver crashed, and the airbag malfunctioned. The defect's potential to harm consumers was therefore too attenuated. *See id.*

This case differs from *Smith* for two key reasons which, viewed together, demonstrate that plaintiffs plausibly allege Whirlpool's knowledge of the Defect and its safety risks. First, *Smith* involved allegations of constructive knowledge, whereas plaintiffs here pleaded actual knowledge arising from direct government communication made pursuant to federal law, rather than online public forums. Second, the Defect poses inherent safety risks, unlike the cracked dashboard in *Smith*.

First, *Smith* concerned constructive knowledge, and the necessary allegations absent in *Smith* are present here. The *Smith* plaintiffs never alleged that GM "engaged with or received complaints about the defective dashboard and its safety risk." *Smith*, 988 F.3d at 885. They merely offered allegations upon "information and belief" that GM monitored online forums and databases. *Id.*

By contrast, plaintiffs here allege that CPSC sent incident reports directly to Whirlpool pursuant to its obligation under federal law. Whereas the *Smith* plaintiffs alleged that GM knew of the defects from publicly available websites and the NHTSA databases—and included no allegation that the manufacturer had received such complaints directly—plaintiffs here plausibly allege that CPSC sent product harm reports directly to Whirlpool consistent with their reporting obligations. *See* 15 U.S.C. § 2055a(c)(1); 16 C.F.R. § 1102.20.

Plaintiffs' allegations are far more specific than those in *Smith*. They allege the precise dates on which consumers sent complaints to CPSC, the contents of those complaints, and the dates on which CPSC forwarded the incident reports to Whirlpool. The amended complaint cites CPSC's database showing the dates CPSC sent consumer complaints about the Defect to Whirlpool. Accordingly, plaintiffs' allegations are more specific than the mere "information and belief" allegations in *Smith.* Therefore, plaintiffs plausibly allege that Whirlpool received CPSC incident reports concerning the Defect, giving rise to actual knowledge of the Defect.

Second, the CPSC complaints sent to Whirlpool plausibly demonstrate that Whirlpool knew of the Defect's safety risks. Here, the Defect is that a Range may actuate unintentionally. And, if a Range actuates, gas will emanate from the user's stove. Accordingly, the Defect poses a safety risk inherent to the use of the Ranges. The CPSC incident reports and consumer complaints cited in the amended complaint discuss these concerns. (*See, e.g.*, Am. Compl., R. 13, PageID 126–128, 132–34, ¶¶ 81–85, 97–99.) These complaints plausibly demonstrate that Whirlpool knew the Defect poses a safety risk. *Contra Smith*, 988 F.3d at 885–86 (explaining that the customer complaints "might have put GM on notice about the cracked dashboard"—the defect—but not the safety risk associated with an event that had never manifested). Moreover, Whirlpool's own Range user manual contemplates the Range's safety concerns when it warns that failing to turn off all controls while not cooking "can result in death or fire." (Am. Compl., R. 13, PageID 122, ¶ 73.) And CPSC's involvement underscores the safety risks involved in this case, as Congress established CPSC due to its concern that consumers faced "unreasonable risks of injury" from products. 15 U.S.C. §§ 2051(a), 2053(a).

We conclude that a plaintiff plausibly alleges that a manufacturer knew of the alleged product defect when a government agency, required by law to transmit consumer complaints

about a safety defect to a manufacturer, indeed transmits those complaints to the manufacturer. Online chatter is fundamentally different from direct government notice. Contrary to the dissent's characterization, this is not "a rule without a limitation," nor is it a new rule to distinguish *Smith*. (Dissent at 4–5.) The limitation is apparent: a plaintiff must plausibly allege that the federal government notified a company of a safety defect, not merely that a consumer complained to the government or some other third party. *Cf. Smith*, 988 F.3d at 885.

This conclusion is consistent with the rules governing inferences in a Rule 12(b)(6) motion to dismiss. Assessing whether Whirlpool "engaged with or received" complaints requires us to draw inferences. *Smith*, 988 F.3d at 885. Here, plaintiffs assert that Whirlpool knew of the Defect because it received notice of the Defects from a governmental agency. The amended complaint goes on to provide, as examples, eight complaints identifying the safety concern and the dates CPSC sent each complaint to Whirlpool. If we concluded that Whirlpool did not "engage[] with or receive[]" these complaints despite CPSC having sent them, we would be drawing an inference in Whirlpool's favor. Rule 12(b)(6) requires us to do the opposite at the motion to dismiss stage. Fed. R. Civ. P. 12(b)(6); *see VCST Int'l B.V. v. BorgWarner Noblesville, LLC*, 142 F.4th 393, 399 (6th Cir. 2025).

The dissenting opinion concludes that plaintiffs fail to plausibly plead that Whirlpool engaged with or examined the consumer complaints, citing a lack of explanation of Whirlpool's process for engaging with the complaints. (Dissent at 4.) But plaintiffs could not know such information at this stage. Without discovery, plaintiffs cannot plausibly allege Whirlpool's processes for reviewing CPSC complaints. Through discovery, plaintiffs may determine whether Whirlpool examined or engaged with the complaints. At the motion to dismiss stage, where plaintiffs lack information about Whirlpool's internal process for reviewing government-produced consumer reports, plaintiffs have met their burden to allege that Whirlpool plausibly knew of the Defect.

At oral argument, counsel for Whirlpool argued that *Smith* requires three sets of allegations lacking in plaintiffs' amended complaint: plausible allegations that (1) Whirlpool engaged with or received consumer complaints; (2) the complaints were frequent enough that they constituted more than a "blip" on a manufacturer's radar; and (3) the complaints identify a

safety defect. As discussed above, the amended complaint plausibly alleges that Whirlpool received consumer complaints and that those complaints identify a safety defect. Whether the CPSC reports were sufficiently frequent in number, however, requires further discussion.

In *Smith*, we reasoned that the plaintiffs did not allege sufficiently frequent online complaints to infer constructive knowledge. There, the plaintiffs alleged that consumers posted on public forums but did not allege that any complaint was made—or sent—directly to GM. *Smith*, 988 F.3d at 885. We held that the plaintiffs failed to allege facts in support of their allegations that GM reads online message boards and NHTSA databases. *Id.* This distinction is key. Complaints made online to third parties, without any allegations that the complaints were received by the manufacturer, must be sufficiently frequent to plausibly infer that the manufacturer had learned of the issue. *Id.* (quoting *Roe*, 2019 WL 3564589, at *7).

This reasoning makes sense in the constructive knowledge context. To infer constructive knowledge, the *Smith* plaintiffs had to allege that despite never directly receiving notice of the consumer complaints, the complaints were so frequent that GM must have heard the online chatter. *See id.* But here, we need not infer constructive knowledge because the complaints were plausibly sent to and received by Whirlpool pursuant to federal law.

We also cannot assess whether these CPSC incident reports were lost in a sea of complaints, *see Smith* 988 F.3d at 885, because there is no record yet of the number of CPSC complaints Whirlpool receives. Plaintiffs cannot, at this preliminary stage of litigation, allege who at Whirlpool processes, stores, or reads complaints sent by CPSC. Nor can they allege how many CPSC complaints Whirlpool receives, making it difficult to determine whether these eight "examples" are an anomaly.[3]

Because knowledge can be alleged generally and only plausibility is required at the motion to dismiss stage, we reject Whirlpool's "number-of-complaints" argument. And we note

---

[3]The dissenting opinion contends that *Smith*'s number-of-complaints reasoning controls here due to the few examples of complaints cited compared to the size of Whirlpool. (Dissent at 5.) But the dissenting opinion's reasoning would create a sliding scale of protection for larger companies, requiring courts to ascertain whether a certain number of complaints was sufficient to put a company of a certain size on notice that its product had a defect. Such a sliding scale approach would be unworkable.

that in its motion to dismiss before the district court, Whirlpool did not advance this number-of-complaints based argument. (*See* Br. in Support of Mot. to Dismiss, R. 26, PageID 490.) Instead, Whirlpool argued that the complaints failed to allege personal injury or property damage. (*Id.* ("Taken together, these complaints cited by Plaintiffs establish, at most, knowledge of a minor inconvenience, which is insufficient to support Plaintiffs' consumer fraud and warranty claims.").) Regardless, these eight incidents are cited as examples, and discovery may reveal how many complaints raised safety concerns.[4]

For these reasons, plaintiffs plausibly alleged knowledge of the Defect and its related safety risks. The district court erred in ruling to the contrary.[5]

C.

The district court found that, even if plaintiffs had plausibly alleged pre-sale knowledge, plaintiffs' claims should be dismissed for failing to plausibly allege that Whirlpool had a duty to disclose the Defect. Because these claims arise under five states' laws, we consider each state's law below.

*Michigan*. Under Michigan law, highly misleading actions give rise to a duty to disclose product defects. *M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 39 (Mich. Ct. App. 1998). And where a manufacturer has superior knowledge of a defect, not readily available to the consumer, the manufacturer has a duty to disclose. *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1291 (E.D. Mich. 2021) (citing *Glidden Co. v. Jandernoa*, 5 F. Supp. 2d 541, 553 (W.D. Mich. 1998)); *Estate of Pilgrim v. Gen. Motors LLC*, 596 F. Supp. 3d 808, 824–25 (E.D. Mich. 2022)

---

[4]The dissenting opinion asserts that the district court expressly discussed the "number-of-complaints" issue in its opinion and order. (Dissent at 4–5.) It did not. The district court focused on the safety implications of the defect, concluding that "[p]laintiffs neither allege facts nor provide information to support the conclusory assertion that the complaints were sent to [Whirlpool] by the CPSC, nor that the complaints contained sufficient information to put [Whirlpool] on notice of the alleged safety implications of the Defect." (Op. and Order, R. 40, PageID 726.) To be sure, it cited *Roe v. Ford Motor Co.*, No. 2:18-cv-12528, 2019 WL 3564589, at *7 (E.D. Mich. Aug. 6, 2019), which discussed whether a complaint had identified enough complaints. But the district court's reasoning plainly relied on whether the complaints identified a safety concern, not the number of complaints made.

[5]Whirlpool's brief and the dissenting opinion note that no CPSC complaints in the amended complaint pertained to the Range models purchased by plaintiffs Buschman, Lester, and Meyerholz. Because Whirlpool did not make this argument below and instead argued that plaintiffs' allegations "establish, at most, knowledge of a minor inconvenience," (Mot. to Dismiss, R. 26, PageID 490), plaintiffs never had the opportunity to seek leave to amend and address this deficiency. On remand, plaintiffs should seek leave to include such examples.

(finding plaintiffs sufficiently alleged a duty to disclose under Michigan law where the manufacturer had superior knowledge of a defect causing engine parts to explode).

Consumers are not, as Whirlpool argues, required to inquire about a defect to trigger a manufacturer's duty to disclose.  Though Whirlpool correctly notes that plaintiffs cite no Michigan state court case applying the "superior knowledge" rule, *M&D* did not hold that consumer inquiry was the *sole* circumstance imposing a duty to disclose.  *See M&D*, 585 N.W.2d at 39 (noting that highly misleading actions give rise to a duty to disclose product defects).  Indeed, we have held that the duty arises "*most commonly* in a situation where inquiries are made by the plaintiff," but not that an inquiry is always required.  *See MacDonald v. Thomas M. Cooley L. Sch.*, 724 F.3d 654, 666 (6th Cir. 2013) (quoting *Hord v. Env't Rsch. Inst. of Michigan*, 617 N.W.2d 543, 550 (Mich. 2000)).

Whirlpool contends that, even if a duty to disclose arises out of superior knowledge, they lack such superior knowledge here.  Because consumer complaints about the Defect were publicly available online, Whirlpool argues that plaintiffs had access to the same information as Whirlpool.  But the Michigan Supreme Court has held otherwise when assessing fraud claims. *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 569 (Mich. 2012) ("[A]lthough the doctrines of actionable fraud, innocent misrepresentation, and silent fraud each contain separate elements, none of these doctrines requires that the party asserting fraud prove that the fraud could not have been discovered through the exercise of reasonable diligence.").

Moreover, we are reluctant to impose a duty of discovery on plaintiffs or defendants in this context.  Doing so would contravene our reasoning in *Smith*.  In *Smith*, we concluded that allegations of a manufacturer monitoring online message boards or public databases was insufficient to plausibly demonstrate knowledge.  *See* 988 F.3d at 885–86.  But here, Whirlpool asks us to conclude that, because plaintiffs could access similar information online, plaintiffs had the same knowledge as Whirlpool.  (Appellee Br. 42 ("Plaintiffs cannot rely on these complaints to plead Whirlpool's knowledge while ignoring their relevance to their own knowledge.").)

Whirlpool's knowledge is superior not because it read the publicly available online forums, but because it received incident reports directly from CPSC.  Plaintiffs have not alleged

that they received any similar notice from the government.  Whirlpool thus had superior knowledge of the Defect, so plaintiffs adequately pleaded a duty to disclose the Defect under Michigan law.  We reverse the district court's decision to the contrary.

*Illinois*.  Under Illinois law, "[i]n order to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff."  *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996) (citations omitted).  The Illinois Supreme Court has held that a duty to disclose material facts may arise out of several situations, such as a fiduciary or confidential relationship or a situation where the defendant is in a position of "influence and superiority" over a plaintiff.  *Id.*  Illinois courts have since clarified that, in addition to those two examples, concealing or suppressing material facts can give rise to a duty to disclose.  *See, e.g.*, *RWJ Mgmt. Co. v. BP Prods. N. Am. Inc.*, No. 09 L 7891, 2012 WL 11140385, at *8–9 (Ill. Cir. Ct. May 2, 2012) (collecting cases). "Mere silence in a transaction does not amount to fraud," but if a party is silent while suppressing material facts or deceiving another, a duty to disclose arises under Illinois law.  *Id.*

These requirements are "fairly rigorous."  *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 13 (Ill. App. Ct. 2001), *as modified on denial of reh'g* (Nov. 27, 2001).  And courts have disagreed regarding whether a safety risk imposes a duty to disclose under Illinois law. *Compare O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 965 (N.D. Ill. 2021) (rejecting the plaintiffs' argument that Illinois law imposes a duty to disclose safety defects), *with In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 414 (S.D.N.Y. 2017) (discussing that at least two other courts had found a duty to disclose safety defects under Illinois law), *modified on reconsideration*, No. 14-MC-2543 (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017).

Here, plaintiffs do not plausibly allege that Whirlpool had a duty to disclose under Illinois law.  Plaintiffs concede they lacked a confidential or fiduciary relationship with Whirlpool but argue that Whirlpool concealed material facts.  Their allegations do not, however, specify how Whirlpool concealed those facts, seeming instead to rely on a few courts' decisions finding that a safety risk imposes a duty to disclose under Illinois common law.

Plaintiffs' reliance on the "safety risk" duty to disclose argument lacks a strong basis in Illinois law.  The two cases cited in *In re General Motors LLC Ignition Switch Litigation* were from district courts in New Jersey and Florida, and neither contained a thorough analysis of Illinois law.  *See In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-CV-2765 , 2017 WL 1902160, at *20 (D.N.J. May 8, 2017); *In re Takata Airbag Prods. Liab. Litig.*, No. 14-CV-24009, 2017 WL 2406711, at *5 (S.D. Fla. June 1, 2017).

Accordingly, we affirm the district court's determination that plaintiffs did not sufficiently plead a duty to disclose the Defect under Illinois law.

*Oklahoma*.  Under Oklahoma law, "a legal or equitable duty to disclose all material facts may arise out of the situation of the parties, the nature of the subject matter of the contract, or the particular circumstances surrounding the transaction."  *Sutton v. David Stanley Chevrolet, Inc.*, 475 P.3d 847, 854 (Okla. Oct. 21, 2020) (citation omitted).  Such circumstances exist where the "offending party created a false impression concerning material facts that was relied upon by the other party to his detriment and to the benefit of the offending party."  *Id.*  And, where someone knows of a fact "peculiarly within [their] knowledge and the other person is not in a position to discover [it,]" they have a duty to disclose that material fact.  *Seay v. Weaver*, No. 19-CV-00474-GKF-JFJ, 2021 WL 3686695, at *6 (N.D. Okla. July 23, 2021) (citing Oklahoma Uniform Jury Instructions – Civil 18.5).  The district court erred by requiring that plaintiffs allege a confidential or fiduciary relationship to establish a duty to disclose.

Plaintiffs argue that Whirlpool created a false impression regarding the Defect.  Specifically, they argue that they each expected a two-part actuation system but received a Range with the Defect—where the Range would actuate with a single motion.  Because the amended complaint plausibly alleges that Whirlpool had superior knowledge over the ordinary consumer, plaintiffs plausibly alleged a duty to disclose under Oklahoma law.  We reverse the district court's decision finding otherwise.

*New Hampshire*.  Under New Hampshire law, "[a] duty to disclose arises when a seller knows of a concealed defect which is unknown to the buyer and not capable of detection by the buyer, provided the defect is dangerous to life or property."  *Univ. Sys. of New Hampshire v. U.S.*

*Gypsum Co.*, 756 F. Supp. 640, 651 (D.N.H. 1991) (citing *Ingaharro v. Blanchette*, 440 A.2d 445, 447 (N.H. 1982)). The district court found that Whirlpool had no duty to disclose because Whirlpool lacked the requisite knowledge. Because plaintiffs plausibly pleaded Whirlpool's knowledge, however, they plausibly pleaded Whirlpool's duty to disclose under New Hampshire law. Therefore, we reverse the district court's decision dismissing plaintiffs' claim under New Hampshire law.

*Nevada*. Whirlpool did not move to dismiss plaintiffs' Nevada fraud claim for lack of a duty to disclose. (*See* Reply, R. 32, PageID 586–87.) Accordingly, plaintiffs' Nevada claim will be reinstated.

## D.

Finally, we consider whether the district court erred by dismissing plaintiffs' state consumer protection claims. We address each state claim in turn.

*Michigan*. Plaintiffs allege Whirlpool violated the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, *et seq.*

Plaintiffs argue that they need not prove that Whirlpool knowingly made false statements or had a duty to disclose the Defect. Whirlpool counters that, even if the Michigan Act does not require Whirlpool's knowledge of the defect, plaintiffs' claim fails because "where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff," a plaintiff cannot maintain a claim. *Evans v. Ameriquest Mortg. Co.*, No. 233115, 2003 WL 734169, at *3 (Mich. Ct. App. Mar. 4, 2003) (per curiam) (citation omitted).

For the reasons stated previously, Whirlpool's argument lacks merit. Plaintiffs could not discover the Defect prior to purchasing their Ranges through an online or visual inspection—the Defect is purely physical, and plaintiffs plausibly alleged Whirlpool had superior knowledge. Accordingly, plaintiffs plead plausible claims under the Michigan Act.

*Illinois*. Plaintiffs allege Whirlpool violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1, *et seq.* While the parties argue about whether the district court incorrectly analyzed the Illinois common law and statutory claims

together because of Federal Rule 9(b)'s heightened pleading requirements, the district court erred for a separate reason. The district court incorrectly required plaintiffs to plead a duty to disclose under the Illinois Act. The district court should have recognized that "[t]he [Illinois Act] generally does require that sellers engaged in trade or commerce disclose any material facts to consumers, regardless of the existence of a common law duty." *Miller*, 762 N.E.2d at 14; *Celex Grp., Inc. v. Exec. Gallery, Inc.*, 877 F. Supp. 1114, 1130 (N.D. Ill. 1995).

Thus, while plaintiffs' claim under Illinois common law fails for failure to plausibly allege a duty to disclose, no such duty is required under the Illinois Act. They, therefore, plausibly allege a claim under the Illinois Act.

*Oklahoma*. Plaintiffs allege Whirlpool violated the Oklahoma Consumer Protection Act, Okla. Stat. tit. 5, §§ 751, *et seq.* Claims under the Oklahoma Act must plausibly allege pre-sale knowledge. Okla. Stat. Ann. tit. 15, § 753 (prohibiting "[m]ak[ing] a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction"). Because plaintiffs plausibly allege Whirlpool's pre-sale knowledge, they allege plausible claims under the Oklahoma Act.

*New Hampshire*. Plaintiffs allege Whirlpool violated the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.* New Hampshire's consumer protection statute requires pre-sale knowledge of a defect. *See Kelton v. Hollis Ranch, LLC*, 927 A.2d 1243, 1246 (N.H. 2007) (explaining that "[t]he plain language of" New Hampshire's consumer-protection statute "indicates that some element of knowledge on the part of the defendant is required"). Because plaintiffs plausibly alleged pre-sale knowledge, they plausibly allege claims under the New Hampshire Act.

*Nevada*. Plaintiffs allege Whirlpool violated the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0999, *et seq.* Plaintiffs charge that Whirlpool did not argue, and the district court did not hold, that their Nevada statutory claims failed for a lack of duty to disclose. As such, they reiterate that their Nevada statutory claim should be reinstated. Because plaintiffs plausibly alleged pre-sale knowledge, they plausibly allege claims under the Act.

III.

For the foregoing reasons, we affirm in part and reverse in part the district court's order granting Whirlpool's motion to dismiss plaintiffs' amended complaint. Plaintiffs' common law fraud and consumer protection claims—aside from plaintiffs' Illinois common law fraud claim—shall be reinstated.

———————————

**DISSENT**

———————————

LARSEN, Circuit Judge, dissenting.  I agree with the majority's conclusion that the named plaintiffs have Article III standing to pursue their claims against Whirlpool.  I disagree, however, that plaintiffs have sufficiently alleged that Whirlpool had knowledge of the defect.  Because the lack of knowledge dooms plaintiffs' claims, I would affirm the district court in its entirety.  I respectfully dissent.

I.

First, standing.  Article III allows courts to decide only "Cases" and "Controversies."  U.S. Const., art III, § 2.  For standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

The question here focuses on the first standing requirement—injury in fact.  To satisfy this requirement, the injury must be "concrete—that is, real, and not abstract."  *Id.* at 424 (citation omitted).  "Requiring a plaintiff to demonstrate a concrete and particularized injury caused by the defendant and redressable by the court ensures that federal courts decide only the rights of individuals, and that federal courts exercise their proper function in a limited and separate government."  *Id.* at 423 (citations omitted).  "[T]raditional tangible harms, such as physical harms and monetary harms," suffice.  *Id.* at 425.  Where a party seeks monetary relief, such as damages, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm."  *Id.* at 436.

At this stage in the case, "we take as true the well-pleaded allegations in the complaint and ask whether plaintiffs plausibly alleged their standing to sue."  *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022).  The named plaintiffs here have each alleged that the ranges they purchased have a defect—that is, they turn on inadvertently.  Each of the named plaintiffs experienced the unintended actuation.  They allege

that the unintended actuations resulted in the ranges omitting gas into their homes without warning and, in one instance, causing a fire. As such, the alleged defect in the ranges manifested for each of the named plaintiffs. Those allegations are sufficient to confer standing. *See Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 315 (6th Cir. 2025) (en banc).

## II.

Although I agree with the majority's conclusion that the plaintiffs have standing, I depart from the majority opinion on the question of Whirlpool's knowledge. Plaintiffs' claims for fraud by omission, and for violation of the relevant state consumer protection statutes, cannot succeed unless Whirlpool had knowledge of the defect. Plaintiffs have failed to adequately allege Whirlpool's knowledge, and that is fatal to plaintiffs' complaint.[1]

Generally, when alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). But "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Even under generalized pleading rules, however, plaintiffs' amended complaint fails to adequately plead Whirlpool's knowledge of the defect.

In *Smith v. General Motors, LLC*, we examined whether General Motors (GM) had knowledge of a defect that led to cracked dashboards in vehicles that it had sold. 988 F.3d 873, 885 (6th Cir. 2021). There, "[p]laintiffs only offered 'information and belief' that GM knew of the complaints." *Id.* at 885. We held that such allegations were insufficient because there was no factual basis for them. *Id.* According to the complaint in *Smith*, GM should have been aware of a flood of customer complaints, which "came as online posts on car websites . . . and complaints on the [National Highway Traffic Safety Administration (NHTSA)] database about the cracks, including 239 NHTSA safety complaints related to the cracked dashboards." *Id.* We held that this was insufficient to allege GM's knowledge. The allegations were too speculative

---

[1]The district court also dismissed plaintiffs' claims for violation of the Magnuson-Moss Warranty Act, for breach of express and implied warranty, and for unjust enrichment. Plaintiffs don't challenge the dismissal of those claims on appeal. *See* Appellants Br. at 20 ("Plaintiffs appeal the district court's dismissal of their claims for common law fraud by omission and the violation of several state consumer protections statutes."). So they have abandoned them. *See Castellon-Vogel v. Int'l Paper Co.*, 829 F. App'x 100, 102 (6th Cir. 2020).

to show knowledge because they would have been "a blip" on GM's "complaints-and-repairs radar considering the millions of . . . cars in use." *Id.* (citation omitted). "[N]othing show[ed] that the complaints about GM's cracked dashboards were frequent enough that they were not lost in a sea of complaints and repairs amassing by the dozens each day." *Id.* (citation omitted). So, "[w]ithout supporting facts that GM engaged with or received complaints about the defective dashboard and its safety risk, the consumer complaints [were] insufficient to allege that GM knew about the defective dashboard under the 12(b)(6) pleading standard." *Id.*

The allegations here are even less substantial than those found insufficient in *Smith.* Plaintiffs attempt to show Whirlpool's knowledge through two categories of consumer complaints; but whether taken alone or together, they fail to adequately allege knowledge. First, according to the amended complaint, "[c]onsumers have submitted numerous incident reports about the Defect to the U.S. Consumer Product Safety Commission ('CPSC')." R. 13, Amended Complaint, PageID 126. The complaint then provides eight examples. Two of those reports were made in 2016, one in 2017, two in 2018, two in 2019, and one in 2020. Eight complaints over a five-year span are not enough to have put Whirlpool on notice by the time the last plaintiff bought her range in 2021. And it's even more true that three complaints over two years could not have been enough to put Whirlpool on notice when the first plaintiff bought her range in 2018.

Plaintiffs next identify online consumer complaints, which they allege were submitted "directly to Whirlpool via reviews posted to its website." *Id.* at 129. But like the CPSC complaints, only a handful came before the alleged purchases here.[2] Our holding in *Smith* compels the conclusion that the handful of consumer complaints alleged here fall far short of showing Whirlpool's knowledge of the defect. In *Smith*, we deemed 239 complaints to be a "blip" on GM's radar, given the millions of GM cars in use. 988 F.3d at 885. Here, plaintiffs offer only a few complaints that allegedly should have put Whirlpool on notice that several models of the ranges they made were defective.

---

[2]The amended complaint also alleges that "certified Whirlpool appliance technicians have observed unintentional actuation in Ranges in the field." R. 13, Amended Complaint, PageID 134. Plaintiffs have abandoned any such reliance on that allegation before this court by not addressing it. So that leaves only the CPSC complaints and the complaints posted to Whirlpool websites.

Further, as in *Smith*, there is no plausible allegation here that Whirlpool engaged with the alleged consumer complaints. The closest the complaint comes is the allegation that the CPSC "transmitted all th[e] complaints to" Whirlpool. R. 13, Amended Complaint, PageID 126. But without further explanation of the process by which Whirlpool examined those few complaints, the allegations are insufficient to establish that Whirlpool engaged with or actually knew of the alleged defect, such that it thought it needed to do something about it. *Smith*, 988 F.3d at 885. Accordingly, plaintiffs have failed to plausibly allege that Whirlpool had sufficient knowledge of the alleged defect.

The majority opinion creates a new rule in an attempt to distinguish *Smith*: "a plaintiff plausibly alleges that a manufacturer knew of the alleged product defect when a government agency, required by law to transmit consumer complaints about a safety defect to a manufacturer, indeed transmits those complaints to the manufacturer." Maj. Op. at 10–11. That is a rule without a limitation. Is one consumer complaint sufficient to give a company the size of Whirlpool knowledge that it must act to investigate and fix a defect in a product or else face a potential class-action lawsuit? If not, then why is eight (at most) sufficient? What about when multiple product models are involved, as here? The amended complaint lists sixteen models and purports to include "all other models (discontinued or still available for sale) containing substantially similar front-mounted burner controls." R. 13, Amended Complaint, PageID 119. Even if we disregard the dates of the complaints and countenance all eight provided in the pleading, they encompass only four of the sixteen models identified in plaintiffs' amended complaint, with five of the eight complaints pertaining to the same model.[3] What's more, five of the complaints pertain to the range model purchased by two of the named plaintiffs; the rest of the complaints aren't related to the models purchased by the remaining plaintiffs at all. The majority opinion offers no case to show that such a miniscule number of complaints, even if transmitted directly to Whirlpool, is sufficient to put a company of this size on notice that it must investigate and fix an alleged defect in sixteen or more different range models.

---

[3]Four of the complaints reference Model No. WGG745S0FS02, while one references Model No. WGG745S0FS. The amended complaint lists only the former as among the models at issue, so I proceed under the assumption that they are the same. Even if not, the point remains the same.

The majority opinion also faults Whirlpool for not raising its "number-of-complaints based argument" in its motion to dismiss. Maj. Op. at 13. But Whirlpool's brief in support of the issue at least touched on that issue. *See* R. 26, PageID 489 ("Plaintiffs fail to plausibly allege Whirlpool's pre-sale knowledge of a safety defect about which it did not warn."); *id.* ("[T]o establish these claims, Plaintiffs must plead Whirlpool's pre-sale knowledge of the defect."). And, in any event, the district court expressly discussed this issue in its opinion and order. R. 40, Dist. Ct. Order, PageID 726–27. That is sufficient to make the issue live for our review. *See Raines v. United States*, 898 F.3d 680, 687 (6th Cir. 2018) ("There can be no forfeiture where the district court, despite a party's failure to press an argument, nevertheless addressed the merits on the issue." (cleaned up)).

Plaintiffs' failure to adequately allege knowledge is fatal to their claims for fraud by omission and violation of the relevant state consumer protection statutes. For that reason, I would affirm the district court's grant of the motion to dismiss in Whirlpool's favor in its entirety. I respectfully dissent.